ANIMAL PROTECTION SOCIETY OF DURHAM, INC., DURHAM COUNCIL OF THE BLIND, INC., I.R.F., INC., AND JERRY W. McLAURIN, PLAINTIFF-APPELLANTS v. THE STATE OF NORTH CAROLINA, LACY H. THORNBURG, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, RONALD L. STEPHENS, DISTRICT ATTORNEY FOR THE 14TH PROSECUTORIAL DISTRICT, AND ROLAND W. LEARY, SHERIFF OF DURHAM COUNTY, DEFENDANT-APPELLEES

No. 8814SC962

(Filed 5 September 1989)

1. **Rules of Civil Procedure § 56.3 — summary judgment for defendants based on plaintiffs' affidavits**

   Summary judgment was properly entered in favor of defendants where the pleadings and affidavits submitted by plaintiffs established that defendants were entitled to judgment as a matter of law.

2. **Gambling § 4 — charitable sales promotion — free bingo upon purchase of items — bingo statutes applicable**

   Even if a corporate charitable solicitor's sale of combs and candies to patrons who were then permitted to participate in "free" bingo games fit within the G.S. Ch. 131C definition of a "charitable sales promotion," the element of bingo in the fundraising scheme brought all activity connected with the

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

operation of that game within the ambit of the bingo statutes, G.S. Ch. 14, Art. 37, Part 2.

3. **Gambling § 4— consideration for bingo—applicability of gambling and bingo statutes**

While consideration must exist for bingo to be a violation of the gambling statutes, any activity which meets the definition of bingo in N.C.G.S. § 14-309.6 comes within the purview of the bingo statutes whether or not consideration is paid to play the game.

4. **Gambling § 4— bingo statutes—licensure and proceeds violations—penalties against charitable solicitors and charities**

The penalty provisions of the bingo statutes may be enforced against a corporate charitable solicitor and two charities where the record establishes that bingo games conducted by the charitable solicitor for the charities violate provisions of the bingo statutes regarding licensure and use of game proceeds.

5. **Gambling § 4— "free" bingo upon purchase of items—violation of gambling statutes**

Consideration was required for participation in "free" bingo games offered by a charitable solicitor to patrons who purchased combs and candies at inflated prices so that the bingo games constituted gambling in violation of N.C.G.S. § 14-292 where the patrons understood their purchases to be the basis for the opportunity to play bingo. The fact that some patrons may have obtained bingo cards without first buying combs or candy did not transform the bingo games into games without consideration where patrons who obtained the cards without making a purchase received fewer cards than those who bought the items, and the other patrons thus had to pay to obtain a greater number of cards.

6. **Appeal and Error § 3— constitutional issue—reply brief—issue not before appellate court**

Although an argument that the bingo statutes abridge commercial speech in violation of the First Amendment was presented in the trial court, that issue was not properly presented to the appellate court where it was raised only in appellants' reply brief and not in their initial brief.

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

APPEAL by plaintiffs from *Wiley F. Bowen, Judge*. Judgment entered 18 June 1988 in Superior Court, DURHAM County. Heard in the Court of Appeals 11 April 1989.

*David S. Crump for plaintiff-appellants.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Christopher P. Brewer and Associate Attorney General David F. Hoke, for defendant-appellees.*

BECTON, Judge.

At issue in this action for declaratory and injunctive relief is the applicability of North Carolina's "bingo statutes," N.C. Gen. Stat. Secs. 14-309.5 through 14-309.14, to the "charitable sales promotion" conducted by or on behalf of the plaintiffs. The plaintiffs are two charities, a corporate charitable solicitor, and the individual president of the corporate solicitor. The defendants are the State of North Carolina and various officials charged with enforcing the bingo statutes. Plaintiffs appeal from summary judgment granted in favor of the defendants. We affirm.

I

The corporate plaintiff, I.R.F., Inc., is a North Carolina corporation owned by its president, the individual plaintiff, Jerry W. McLaurin. I.R.F. is licensed as a "professional solicitor" under the Charitable Solicitation Licensure Act, N.C. Gen. Stat. Sec. 131C-1 *et seq.* (1986 & Supp. 1988). The charitable plaintiffs, the Animal Protection Society of Durham, Inc., and the Durham Council of the Blind, Inc., are also licensed to solicit charitable contributions under the Charitable Solicitation Act. Although the charities were at one time licensed to conduct bingo games under N.C. Gen. Stat. Sec. 14-309.7, neither I.R.F. nor the charities are currently licensed under that statute.

In November 1987, I.R.F. contracted with the two charities to operate a "charitable sales promotion" on their behalf. A "charitable sales promotion" is defined in Chapter 131C as "an advertising campaign sponsored by a for-profit entity which offers for sale a tangible item . . . upon the representation that all or a portion of the purchase price will be donated to a person established for a charitable purpose." Sec. 131C-3(2) (1986). As "an inducement to make purchases and donations," I.R.F. offered "free bingo games" to persons participating in the charitable sales promotions.

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

I.R.F.'s charitable sales promotions were conducted at a place of business called "The Oasis" in Durham County. (It is not clear from the record what business—other than charitable sales promotion—The Oasis conducted.) To accomplish the sales promotion, I.R.F. advertised the sale of plastic hair combs (retail value 19 cents) and peppermint candies (retail value 1 cent), which it then sold for $5.00 and $1.00 respectively, to patrons of The Oasis. I.R.F. advertisements stated that "[t]he difference between the purchase price and the actual retail value of purchased merchandise offered in this sales promotion, [sic] is a charitable donation, and may be tax deductable [sic]." Upon purchasing combs or candy, the patron was given "free" bingo game cards. The greater the patron's "donation," the more "free" game cards the patron received. Patrons were then allowed to participate in the "free bingo games," at which substantial cash prizes were awarded.

I.R.F. emphasizes on appeal that there was no charge for participating in a bingo game, and that anyone who wished to play without making a donation could do so simply by requesting the cards. I.R.F. advertisements displayed at The Oasis declared:

THE BINGO GAMES offered in this sales promotion are offered "Absolutely FREE" as an advertising promotion for the purchase of merchandise offered in this sales event. You may obtain absolutely "FREE" Bingo Cards for future events by sending your request . . . to . . . [I.R.F.] . . . .

However, persons who requested bingo cards without first buying combs or candies received fewer cards than patrons who purchased the items.

The promotion apparently was successful, both for the charities and for the professional solicitor, although the charities received a substantially smaller share of the revenues than did I.R.F. The record shows that, for the months of January and February 1988, the gross receipts from the sale of combs and candies was $663,250.00. The charities each received less than 9% of that amount, $59,658.00. In contrast, the "solicitor's fee" for the same two month period was $132,649.00, or 20% of the gross revenues. The remaining $411,285.00 went to cover I.R.F.'s "advertising and promotion expense" incurred in conducting the charitable sales promotion. The charities did not object to this distribution of revenues. In fact, their contracts with I.R.F. explicitly provided:

Professional Solicitor makes no representations to Charity with regard to the character of income derived by the Charity from the charitable sales promotion. . . . DUE TO THE COST OF GOODS, COST OF ADVERTISING, OVERHEAD AND OTHER COST FACTORS ASSOCIATED WITH A CHARITABLE SALES PROMOTION, THERE IS A POSSIBILITY THAT CHARITY MAY RECEIVE LESS THAN FIFTY PERCENT (50%) OF THE GROSS RECEIPTS OF THE SOLICITATION. . . .

In February 1988, defendant District Attorney Stephens informed the plaintiffs that their activities constituted an illegal bingo game in violation of this State's bingo statutes.

The plaintiffs brought the present suit seeking declaratory and injunctive relief, specifically praying for: (1) a declaration that their charitable sales promotion was not illegal gambling within the meaning of Part 1 of Article 37 of Chapter 14 of the General Statutes, N.C. Gen. Stat. Secs. 14-289 et seq. (entitled "Lotteries and Gaming"); (2) a declaration that the charitable sales promotion was not governed by Part 2 of Article 37 of Chapter 14, N.C. Gen. Stat. Secs. 14-309.5 et seq. (entitled "Bingo and Raffles"); and (3) an injunction restraining the defendants from enforcing Chapter 14, Article 37 against them. In the alternative, the plaintiffs sought a declaration that Section 14-309.5 is unconstitutionally vague and violates the plaintiffs' First Amendment rights.

Defendants moved for summary judgment. Plaintiffs also moved for summary judgment. The trial judge granted the motion in favor of the defendants, and the plaintiffs appealed. The central question arising from the plaintiffs' several contentions on appeal is whether their activities constituted illegal bingo.

II

[1] Plaintiffs first contend that they were entitled to summary judgment because defendants failed to submit any affidavits or other evidence showing that plaintiffs operated an illegal bingo game. However, Rule 56(b) provides that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment. . . ." N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 56(b) (1983) (emphasis added). Summary judgment may be granted if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine is-

sue as to any material fact and that *any* party is entitled to judgment as a matter of law. R. Civ. P. 56(c). It makes no difference if the only evidence outside the pleadings came from the plaintiffs, since, as we explain below, the pleadings and the affidavits submitted by the plaintiffs established that defendants were entitled to judgment as a matter of law.

### III

[2] "Bingo" is defined in Article 37 of Chapter 14 as "a specific *game of chance* played with individual cards having numbered squares ranging from one to 75, in which *prizes are awarded* on the basis of designated numbers on such cards conforming to a predetermined pattern of numbers. . . ." N.C. Gen. Stat. Sec. 14-309.6 (1986) (emphasis added). Plaintiffs admit that they operated this game, but they argue that they did so only in connection with their promotion of the sale of combs and candies. Plaintiffs contend that since their activities constituted a charitable sales promotion, Chapter 131C governed their conduct rather than Article 37 of Chapter 14. We disagree.

When faced with two statutes applicable to a particular situation, one of which is general and the other of which is specific, the statute which addresses the situation in detail governs over the statute which addresses it in general and comprehensive terms, unless it appears that the legislature intended that the general statute control. *See, e.g., Food Stores v. Bd. of Alcoholic Beverage Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966). Chapter 131C is concerned only with establishing basic standards for charitable fundraising; it does not address fundraising through bingo. *See* Sec. 131C-2 (1986). The bingo statutes in Part 2 of Chapter 14, Article 37, on the other hand, cover, in exhaustive detail, the operation of bingo games to benefit charities. We conclude, then, that the element of bingo in I.R.F.'s fundraising scheme brought all activity connected to the operation of that game within the ambit of the bingo statutes, even if I.R.F.'s sale of combs and candies fit within Chapter 131C's definition of "charitable sales promotion."

### IV

Plaintiffs contend the trial judge erred in granting summary judgment for the defendants because a genuine issue of material fact remained for trial, namely, whether consideration was required

to participate in the "free" bingo games operated by I.R.F. Plaintiffs insist that their activities were not "gambling" prohibited by Part 1 of Chapter 14, Article 37, because no consideration was required to play. In turn, because Part 1 is inapplicable to their conduct, plaintiffs argue, Part 2 of Article 37 cannot apply either. Before we address plaintiffs' contentions, we provide a general overview of Article 37.

A

Part 1 of Chapter 14, Article 37, entitled "Lotteries and Gaming," prohibits lotteries, pyramid and chain schemes, and various forms of gambling. *See* N.C. Gen. Stat. Secs. 14-289 to 14-309.4 (1986 & Supp. 1988). Section 14-292, entitled "Gambling," provides, *"Except as provided in Part 2 of this Article*, any person or organization that *operates* any game of chance . . . at which money . . . is bet . . . shall be guilty of a misdemeanor." Sec. 14-292 (1986) (emphasis added). Likewise, any person who *plays* in a game of chance at which money is bet is also guilty of a misdemeanor. *Id. See also State v. Stroupe*, 238 N.C. 34, 40, 76 S.E.2d 313, 317 (1953). Bingo is one form of gambling prohibited by the statute. *See, e.g., Durham Council of the Blind v. Edmisten*, 79 N.C. App. 156, 157, 339 S.E.2d 84, 86 (1986).

Part 2 of Chapter 14, Article 37, entitled "Bingo and Raffles," provides an exception to Section 14-292's prohibition against gambling. The "bingo statutes" in Part 2 permit charitable, civic, religious, and certain other tax exempt organizations to conduct bingo games and raffles, but only under strictly limited circumstances. *See* N.C. Gen. Stat. Secs. 14-309.5 to 14-309.14 (1986 & Supp. 1988). "Beach bingo" — at which prizes under $10 are awarded — is excepted for the most part from the strictures of the bingo statutes. *See* Secs. 14-309.6(6), 14-309.14. See also Sec. 14-309.9 (limit on prizes does not apply to bingo games operated at a fair or exhibition conducted pursuant to Article 45 of Chapter 106); Sec. 14-309.6(2) (definition of "bingo" does not include "instant bingo," through which winners are determined by preselected designation on a card). Beach bingo is not at issue in this case; thus, our subsequent discussion does not apply to that game.

While one evident goal of the bingo statutes is to allow charities and other socially useful organizations to raise money through bingo in order to further the organizations' worthy aims, another manifest purpose is to prevent bingo games from being "operated by full

time professionals for profit." *See Durham Council of the Blind,* 79 N.C. App. at 159, 339 S.E.2d at 87; *see also State v. McCleary,* 65 N.C. App. 174, 183, 308 S.E.2d 883, 890 (1983), *aff'd,* 311 N.C. 397, 316 S.E.2d 870 (1984). Thus, no one other than the listed tax exempt organizations is permitted to conduct bingo games, and the games must be conducted in strict compliance with the requirements set out in Part 2. *See* Secs. 14-309.5; 14-309.7; 14-309.10; 14-309.12.

Some of these requirements are as follows: The exempt organization must be licensed to operate bingo games, and may not contract with any person to conduct the games in its behalf. *See* Secs. 14-309.5; 14-309.7(a), (c). The exempt organization is prohibited from paying anyone other than a member of the organization to conduct a game, and the rate of pay for that member's services is limited to one and one-half times the minimum wage. *See* Sec. 14-309.7(c). The exempt organization may not exceed the statutory maximums on the number or length of sessions of bingo which may be played in any week, *see* Sec. 14-309.8, or on the amount of money or value of other prizes that may be awarded. *See* Sec. 14-309.9. Bingo games may be held only in a building owned or leased by the exempt organization, and all equipment used in the games must be owned by the organization. *See* Sec. 14-309.7. Finally, the use of proceeds obtained from bingo is tightly controlled. Proceeds may be used by the exempt organization only (1) to pay expenses incurred in operating the games, (2) to compensate the member of the organization responsible for conducting the games, and (3) for charitable, religious, civic, or certain other purposes of the exempt organization which inure to the public benefit. *See* Sec. 14-309.11(a). An annual accounting must be made to the Department of Human Resources. Sec. 14-309.11(b).

Substantial penalties may be imposed for operating a bingo game in violation of any of the provisions in Part 2. Any bingo game conducted outside the terms of Part 2 is "gambling" within the meaning of N.C. Gen. Stat. Secs. 19-1 *et seq.* concerning offenses against public morals. *See* Sec. 14-309.12. Likewise, any *licensed* exempt organization which conducts a bingo game in violation of any provision of Part 2 will be guilty of a misdemeanor under Section 14-292, punishable by a fine or imprisonment pursuant to N.C. Gen. Stat. Sec. 14-3. *See* Sec. 14-309.5. The severest penalty is reserved for those who

(i) . . . *operate a bingo game without a license*;

(ii) . . . operate a bingo game while license is revoked or suspended;

(iii) . . . willfully misuse or misapply any moneys received in connection with any bingo game; or

(iv) . . . contract with or provide consulting services to any license[d exempt organization].

*Id.* These persons face conviction of a Class H felony, punishable by up to 10 years imprisonment, a fine, or both. *Id.*; N.C. Gen. Stat. Sec. 14-1.1 (1986). In addition to imposition of a fine or imprisonment, a person or organization convicted of a Class H felony for conducting an illegal bingo game may be ordered to forfeit to the State all money acquired through the bingo operation. *See* N.C. Gen. Stat. Sec. 14-2.3 (1986).

With this overview of Article 37 in mind, we now address plaintiffs' contentions.

B

[3] Plaintiffs challenge the applicability of Part 2 to their activities. Plaintiffs are correct when they assert that consideration must exist for a bingo game to be "gambling" in violation of Part 1. *See* Sec. 14-292. However, contrary to plaintiffs' reading of the statutes, violation of Part 1 is not a prerequisite to violation of Part 2, and payment of consideration to play bingo is not a condition precedent to violation of Part 2. *See* Sec. 14-309.6 (definition of bingo does not include consideration as one of its elements). We hold, therefore, that any activity which meets the Part 2 definition of bingo in Section 14-309.6 is within the purview of the bingo statutes, whether or not consideration is paid to play the game. *Accord Italian Home Community Fed'n v. Kelly*, 12 Misc.2d 33, 178 N.Y.S.2d 694 (1958) (even "free" bingo is illegal if it fails to conform to bingo legislation). We further hold that the penalties in Part 2 are fully enforceable against any person or organization conducting a bingo game in contravention of any of the requirements set out in that Part.

[4] The record before us establishes that the bingo game conducted by I.R.F. violated several provisions in Part 2, in particular, those provisions regarding licensure and use of bingo game proceeds. Thus, the defendants were entitled to summary judgment

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

as a matter of law with respect to plaintiffs' claims challenging the enforcement of Part 2 against them.

C

[5]   Plaintiffs also challenge the applicability of Part 1 to their activities. Plaintiffs assert that a genuine issue of material fact remained as to whether consideration was required to participate in I.R.F.'s "free" bingo games, and therefore, as to whether I.R.F.'s activities constituted "gambling" in violation of Section 14-292 of Part 1. We disagree.

We find disingenuous plaintiffs' assertion that "no consideration [was] expected, accepted or required" to play. Plaintiffs' own evidence shows the contrary. Plaintiffs point to affidavits submitted by patrons of The Oasis to support their assertion that the only money paid was for the purchase of combs and candies, not to play bingo. However, the affidavits plainly show that the patrons came to The Oasis to play bingo, not because they wanted or needed combs and candy. The affidavits also show that patrons understood their purchases to be the basis for the opportunity to play bingo. Two affidavits state that persons working at The Oasis told patrons that they would receive free bingo cards "for" making a donation or buying the items. Typical of the affidavits in the record, one affiant states, ". . . *for buying* the candy and combs you get the bingo absolutely free. . . . I do not see why the Oasis Sales Promotion is illegal. It is the best place I have every [sic] been to play bingo. . . ." (Emphasis added.) Another says, "I don't see why it isn't legal for [the plaintiffs] to run *free bingo games to intise [sic] me to buy combs and candies* to support their charitable cause. . . ." (Emphasis added.)

Plaintiffs rely heavily on the fact that some patrons obtained bingo cards without first buying combs or candy. This alone did not transform the bingo games offered by plaintiffs into "free bingo" since patrons who obtained the cards without making a purchase received fewer cards than patrons who did buy the items; thus, it follows that the other patrons had to pay to obtain a greater number of bingo cards. "[A] game does not cease to be [gambling] because some, or even many, of the players are admitted to play free, so long as others continue to pay for their chances." *Commonwealth v. Wall*, 295 Mass. 70, 73, 3 N.E.2d 28, 30 (1936). *Accord State v. Mabry*, 245 Iowa 428, 60 N.W.2d 889 (1953); *McFadden v. Bain*, 162 Or. 250, 91 P.2d 292 (1939). *See also People v. Wil-*

*liams*, 202 Misc.2d 420, 113 N.Y.S.2d 167 (1952) ("free" bingo at which all patrons played without paying nonetheless involved consideration since some patrons paid for the use of chairs and table space).

We hold that no unresolved issue of fact regarding the existence of consideration remained for trial since the plaintiffs' own evidence showed that consideration was an element of the bingo game offered by I.R.F. Therefore, the game was "gambling" in violation of Section 14-292, and defendants were entitled to summary judgment as a matter of law.

## D

Despite plaintiffs' assertions to the contrary, the situation before us is far different from an advertising promotion directed at increasing sales of a legitimate product or service offered in the free marketplace by a business regularly engaged in the sale of such goods or services. The evidence before us unequivocally shows that bingo, not combs and candies, was the product promoted. Likewise, the bingo cards were not distributed generally and indiscriminately to the public, *see, e.g., People v. Shira*, 62 Cal. App. 3d 442, 133 Cal. Rptr. 94 (1976), and were not "instant win" bingo cards, to which the bingo statutes do not apply. Sec. 14-309.6. Nor is this situation analogous to legitimate charitable sales promotions, such as "band candy" sold — often at inflated prices — to finance the purchase of high school band uniforms. There, the product itself and the prospect of donating to a worthy cause motivate the purchase. The extraneous element of bingo plainly distinguishes this transaction from other charitable sales promotions, even if altruism and the desire to own the combs or candy play a significant part in the patrons' decision to buy the items at 26 to 100 times their actual value.

Finally, we view as mere subterfuge I.R.F.'s decision to term its scheme a "charitable sales promotion" and "absolutely free bingo," rather than what it really was, a bingo game operated in violation of Parts 1 and 2 of Chapter 14, Article 37. It is the character of an activity which determines what it really is, not what the parties choose to call it. *See State v. DeBoy*, 117 N.C. 702, 704, 23 S.E. 167 (1895). What our Supreme Court said in 1915 about attempts to circumvent the gambling statutes is equally true today about the bingo games offered by I.R.F.:

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

. . . [N]o sooner is [the prohibited activity] defined, and the definition applied to a given state of facts, than ingenuity is at work to evolve some scheme of evasion which is within the mischief, but not quite within the letter, of the definition. But, in this way, it is not possible to escape the law's condemnation, for it will strip the transaction of all its thin and false apparel and consider it in its very nakedness. *It will look to the substance and not to the form of it,* in order to disclose its real elements and the pernicious tendencies which the law is seeking to prevent. *The court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited.* . . .

*State v. Lipkin,* 169 N.C. 265, 271, 84 S.E. 340, 343 (1915) (emphasis added). No matter the name, the game here was bingo, and it was all the more objectionable because it was operated in part for profit, by an organization cloaked in the sympathetic robes of charitable giving.

V

[6] In their reply brief, the plaintiffs raise a constitutional argument based on the abridgment of commercial speech in violation of the First Amendment to the United States Constitution. We decline to address this contention. Although that argument was presented to the trial court, it was not among those issues argued in the plaintiff-appellants' initial brief which set the framework for the matters to be decided on appeal. Nor was it a matter raised in the defendant-appellees' brief, although the defendants did discuss in general terms prior North Carolina cases upholding the constitutionality of the bingo statutes. *See, e.g., Durham Highway Fire Protection Assoc. v. Baker,* 82 N.C. App. 583, 347 S.E.2d 86 (1986), *disc. rev. denied,* 318 N.C. 693, 351 S.E.2d 744 (1987) (Sec. 14-309.8 did not violate right to free speech because plaintiffs were free to solicit contributions by means other than bingo). The reply brief was intended to be a vehicle for responding to matters raised in the appellees' brief; it was not intended to be — and may not serve as — a means for raising entirely new matters. *See* R. App. P. 28(h) (1988).

VI

It is the legislature's prerogative to establish the conditions under which bingo, lotteries, or other games of chance are to be per-

mitted. The plaintiffs' bingo games, being operated in violation of the requirements set out in Parts 1 and 2 of Chapter 14, Article 37 of the General Statutes, fall within that class of activities now prohibited by the legislature. Accordingly, the order granting summary judgment in favor of the defendants is

Affirmed.

Judges JOHNSON and ORR concur.