GOLDEN RULE INSURANCE COMPANY, AN ILLINOIS CORPORATION, PLAINTIFF v. JAMES E. LONG, INDIVIDUALLY AND AS COMMISSIONER OF INSURANCE FOR THE STATE OF NORTH CAROLINA, DEFENDANT

No. 9210SC677

(Filed 3 August 1993)

1. **State § 1 (NCI3d) — claim against Commissioner of Insurance — sovereign immunity — not waived**

    Sovereign immunity was not waived by the State for an action against the Insurance Commissioner arising from the denial of a rate increase by the purchase of liability insurance because the waiver of immunity extends only to injuries which are specifically covered by the insurance policy. The insurance purchased on behalf of the State covers bodily injury liability and property damage liability, neither of which is alleged in the case at bar.

    **Am Jur 2d, Municipal, County, School, and State Tort Liability § 85.**

2. **Insurance § 26 (NCI4th); Public Officers and Employees § 36 (NCI4th) — rate increase — conditional approval — authority of Commissioner not exceeded — no personal liability**

The Commissioner of Insurance did not exceed the scope of his authority and become personally liable by conditioning approval of Golden Rule's requested rate increase on a one-year guarantee of rates and anniversary date implementation restrictions.

**Am Jur 2d, Insurance §§ 30, 828 et seq.**

3. **Unfair Competition § 1 (NCI3d); Public Officers and Employees § 36 (NCI4th) — Insurance Commissioner — conditional approval of rate increase — jurisdiction of unfair practices claim — no cause of action against State**

The Insurance Commissioner did not exceed his authority and become personally liable by violating the Unfair Trade Practices Act in his conditional approval of a rate increase. Although unfair and deceptive acts in the insurance area are not regulated exclusively by Article 63 of Chapter 58 of the General Statutes, but are also actionable under N.C.G.S. § 75-1.1 (1988), that statute does not create a cause of action against state officers when they act as representatives of the State, as did the Commissioner in this matter.

**Am Jur 2d, Consumer and Borrower Protection §§ 285, 287; Public Officers and Employees § 373.**

**Scope and exemptions of state deceptive trade practice and consumer protection acts. 89 ALR3d 399.**

4. **Insurance § 26 (NCI4th) — withdrawal of insurance company — negotiation with another company by Insurance Commissioner — not outside scope of authority**

Plaintiff's allegations of political favoritism and discrimination against plaintiff in favor of Blue Cross/Blue Shield were not evidence that the Commissioner acted outside the scope of his authority and became personally liable where plaintiff had threatened to terminate its North Carolina policyholders unless its rate increase procedure was accepted and the Commissioner negotiated continuation coverage with BCBS for plaintiff's North Carolina customers. Plaintiff's allegation of discrimination does not constitute a

recognized cause of action and its assignment of error was deemed abandoned because it failed to provide citations of authority or the portions of the record on which it relied to support its argument.

**Am Jur 2d, Insurance §§ 30, 828 et seq.**

5. **Public Officers and Employees § 35 (NCI4th)— Insurance Commissioner—denial of rate increase—no malice—no personal liability**

There was insufficient evidence of malice to hold the Insurance Commissioner personally liable for the denial of a rate increase where plaintiff pointed to the Commissioner's communications with other insurance commissioners about plaintiff at a national meeting and to meetings with plaintiff in which plaintiff contends that the Commissioner became angry and told plaintiff's CEO that he would get plaintiff in the press if plaintiff continued to take the dispute public, threatened to leave the meeting, and remarked that plaintiff was holding the citizens of North Carolina hostage. The Court could not see how the Commissioner's discussions with other commissioners could be evidence of malice and, given the antagonistic relationship that had developed between the parties, the Commissioner's reaction at the meeting could not have been more predictable.

**Am Jur 2d, Public Officers and Employees §§ 358 et seq., 375.**

6. **Appeal and Error § 421 (NCI4th)— brief—failure to include contentions and citations—argument abandoned**

Plaintiff insurance company abandoned a claim under 42 U.S.C. § 1983 against the Insurance Commissioner personally by failing to include any discussion of that claim in its initial brief. Although plaintiff argued the merits of its claim in its reply brief to the Commissioner's official capacity brief, that argument did not mend the defect in plaintiff's initial brief. Furthermore, while plaintiff suggests that an argument on the merits of the § 1983 claim was unnecessary because summary judgment was granted on all claims on the basis of the Commissioner's qualified immunity, plaintiff's claim is still deemed abandoned because plaintiff did not present any argu-

ment as to why the Commissioner's qualified immunity defense should fail.

**Am Jur 2d, Appeal and Error § 691 et seq.**

**7. Pleadings § 364 (NCI4th) — motion to file second amended complaint — denied — undue delay — no abuse of discretion**

There was no abuse of discretion in an action arising from the denial of an insurance rate increase where the motion to file a second amended complaint was denied based on plaintiff's failure to exercise due diligence in filing the motion before the eve of trial and the likelihood of further delay and undue prejudice to defendant. Plaintiff did not file its motion to amend until almost two years and six months after the first amended complaint was filed; both parties had engaged in extensive discovery and various matters had been brought before the court; the motion was filed only 39 days prior to the trial date; and the trial court found that factual allegations raised for the first time in the proposed second amended complaint had been known by plaintiff 7 months earlier.

**Am Jur 2d, Pleading § 310.**

Appeal by plaintiff from judgment entered 24 January 1992 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 26 May 1993.

This action started with a series of rate increase requests by Golden Rule Insurance Company (Golden Rule) affecting two of its health insurance policy forms in North Carolina, GRI-H-1.1 (Policy 1.1) and GRI-H-1.2 (Policy 1.2). The North Carolina Department of Insurance (DOI) had approved each policy in 1985 and 1987 respectively.

In March 1988, Golden Rule applied to the DOI for a premium rate increase for Policy 1.1 to be implemented on 1 May 1988. In June 1988, the DOI authorized implementation of the rate increase. In July 1988, Golden Rule applied for a premium rate increase for Policy 1.2 to be implemented on 1 October 1988. In November 1988, the DOI notified Golden Rule that the requested rate increase was approved for implementation with certain restrictions.

In October 1988, Golden Rule applied for another premium rate increase for Policy 1.1 to take effect 1 January 1989. Golden

GOLDEN RULE INSURANCE CO. v. LONG

[113 N.C. App. 187 (1993)]

Rule requested an increase of 73.6%. DOI staff actuary Walter James reviewed the request and discovered that Golden Rule already had several rate increases on this policy during the preceding eighteen months, which was contrary to the DOI's policy against more than one rate increase per year. In order to approve the rate increase without compromising the DOI's policy the DOI ordered the rate increase effective on the policyholders' anniversary dates. Based on an assumption of anniversary date implementation, and a one-year guarantee of the approved rate, the DOI calculated that a rate increase of approximately fifty percent in total premium income was justifiable.

Golden Rule, by letter dated 11 January 1989, rejected the DOI's offer. Golden Rule informed Commissioner Long of its decision to treat the DOI's insistence on delayed implementation of the increase as a denial of its request and notified Long that it would be nonrenewing all North Carolina Golden Rule insureds under Policies 1.1 and 1.2. Golden Rule subsequently notified all brokers who handled Golden Rule insurance in North Carolina about the nonrenewal. It notified by letter dated 26 January 1989 certain Golden Rule policyholders of its nonrenewal of individual health policies to be effective 1 March 1989.

In late January 1989, a meeting was set up between Commissioner Long and Golden Rule to resolve the dispute. The meeting took place on 6 February 1989 between Long, DOI staff, and certain Golden Rule officials including the CEO Patrick Rooney. Just before the meeting, the DOI staff briefed Commissioner Long concerning the impasse based on the delayed implementation and one year guarantee of the approved rate. The following day Rooney sent Long two letters which raised new proposals relating to the manner in which future rate revisions were to be processed.

After discussing the new proposal with the DOI staff, Commissioner Long concluded that Rooney's proposals could not be lawfully met. Then applicable N.C. Gen. Stat. § 58-251.2 (1989) required that rate increases on individual health insurance policies be approved by the Commissioner of Insurance, whereas Rooney's proposal contained a file-and-use procedure of implementing rate increases based on a guaranteed loss ratio, with disputes to be settled by compulsory arbitration. Commissioner Long, therefore, rejected Golden Rule's proposal by letter dated 8 February 1989. Commissioner Long concluded that Rooney was no longer negotiating in

good faith for the rate increase and that Golden Rule would continue to terminate its North Carolina policies unless Long accepted Rooney's proposed procedure. Thus, Commissioner Long requested in the letter that by 15 February 1989, in accordance with N.C. Gen. Stat. § 58-25.1 (1986) (now N.C. Gen. Stat. § 58-2-190), Golden Rule provide the DOI with a list of policyholders who were being terminated.

In mid-January 1989, upon first learning about Golden Rule's intent to terminate its North Carolina policyholders, Chief Deputy Insurance Commissioner Allen Feezor suggested to Senior Deputy Insurance Commissioner Roger Langley that major health insurers be contacted about continuing coverage for terminated Golden Rule policyholders. Blue Cross/Blue Shield (BCBS) was contacted, but it was not until after the 6 February meeting between Long and Golden Rule that the DOI actually discussed continuation of coverage with BCBS. In mid-February, an agreement was reached whereby BCBS would provide comparable coverage to all terminated North Carolina Golden Rule insureds. Commissioner Long was later informed of the agreement.

On 17 February 1989, Commissioner Long sent a letter to the Golden Rule policyholders who had received notice of nonrenewal. The terminated policyholders were informed why DOI had not approved Golden Rule's rate increase request and that BCBS was offering them comparable substitute coverage. The letter, however, did not distinguish between Policy 1.1 and Policy 1.2. The following working day, 20 February 1989, Commissioner Long approved a similar letter to the North Carolina insurance agents of Golden Rule. The DOI also issued a press release approved by Commissioner Long announcing BCBS's agreement to substitute comparable coverage to terminated Golden Rule insureds.

On 23 March 1989, Golden Rule filed a Petition for Judicial Review and a Motion for Stay in Wake County Superior Court asking for unconditional approval of the requested rate increases for Policies 1.1 and 1.2. On 13 April 1989, the court ordered Commissioner Long immediately to enter a written order giving full, unconditional approval of the pending rate increase requests. Long complied with the court's Order. But that Order was vacated by this Court for lack of jurisdiction in In re Golden Rule Ins. Co. v. North Carolina Dep't. of Ins., 99 N.C. App. 773 (1990) (reported without published opinion).

**GOLDEN RULE INSURANCE CO. v. LONG**

[113 N.C. App. 187 (1993)]

On 8 June 1989, plaintiff filed an amended complaint asserting several claims against Commissioner Long in both his individual and official capacities. The claims included: 1) defamation, 2) intentional interference with contractual relations, 3) violations of the Unfair Trade Practices Act, and 4) violations of 42 U.S.C. § 1983. On 13 December 1991, defendant made a motion for summary judgment both in his individual and official capacities. Plaintiff made a motion to file a second amended complaint. The court denied plaintiff's motion on 22 January 1992 and granted defendant's motion on 24 January 1992.

*Curtis J. Dickinson; and Burford & Pugh, by Robert J. Burford, for plaintiff-appellant.*

*LeBouef, Lamb, Leiby & MacRae, by George R. Ragsdale, Kristin K. Eldridge and E. Daniels Nelson; and North Carolina Department of Insurance, by Ann W. Spragens, General Counsel, for defendant-appellee, individually; and Attorney General Lacy H. Thornburg, by Senior Deputy Attorney General Isham B. Hudson, Jr., for defendant-appellee, officially.*

ARNOLD, Chief Judge.

[1] When a suit is brought against a public official in his official capacity the issue of sovereign immunity is raised. *See Bland v. City of Wilmington*, 278 N.C. 657, 180 S.E.2d 813 (1971). "The doctrine of sovereign immunity — that the State cannot be sued without its consent — has long been the law in North Carolina." *Smith v. State*, 289 N.C. 303, 309, 222 S.E.2d 412, 417 (1976). The doctrine proscribes, among others, "suits to prevent a State officer or commission from performing official duties or to control the exercise of judgment on the part of State officers or agencies." *Id.* at 310, 222 S.E.2d at 417.

Sovereign immunity is absolute unless the defendant expressly consents to be sued or waives immunity under a statutorily created waiver. *State v. Taylor*, 322 N.C. 433, 368 S.E.2d 601 (1988). Plaintiff cites several statutory provisions which it alleges authorize waiver of sovereign immunity up to the amount of the insurance available for the coverage of liability in the policy purchased. But the State's insurance policy at issue does not cover any cause of action related to this dispute. Rather, the insurance purchased on behalf of the State government as named insured covers bodily injury liability and property damage liability, neither of which is alleged in the

case at bar. Defendant has not waived sovereign immunity. The waiver of immunity extends only to injuries which are specifically covered by the insurance policy, and plaintiff alleges no injuries covered by the policy. *See Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 348 S.E.2d 524 (1986).

[2] The official status of state officers, standing alone, however, does not immunize them from suit. *Smith*, 289 N.C. at 331, 222 S.E.2d at 430; *Lewis v. White*, 287 N.C. 625, 643, 216 S.E.2d 134, 146 (1975). A public official, engaged in the performance of governmental duties involving the exercise of discretion, may be held personally liable if it is alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his authority. *Smith*, 289 N.C. at 331, 222 S.E.2d at 430; *see also Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith*, 289 N.C. at 331, 222 S.E.2d at 430. Golden Rule contends that Commissioner Long did not act within the scope of his authority, and that he acted maliciously, thereby removing him from his official status and making him personally liable. We disagree.

### SCOPE OF AUTHORITY

Golden Rule alleges that Commissioner Long acted outside the scope of his authority in several ways. First, they contend that Commissioner Long acted outside his scope of authority by conditioning approval of Golden Rule's requested 73.6% rate increase by imposing a one-year guarantee of rates and anniversary date implementation restrictions. Golden Rule insists that these conditions were not requirements enacted by the Legislature, nor were they properly promulgated as a rule, and, therefore, Commissioner Long exceeded his authority.

The relevant statute governing the authority of the Commissioner of Insurance at the time of this controversy was N.C. Gen. Stat. § 58-251.2(a), which provided in part:

The insurer upon a showing of inadequacy of the rates chargeable on such policies upon which notice of nonrenewal has been given, and a finding as to the same by the Commis-

sioner of Insurance, may increase such rates *with the approval of the Commissioner.*

(Emphasis added.) Golden Rule argues that the statutory language quoted above does not give the Commissioner the authority to demand a delay in implementation or a guarantee of rates for one year.

"An issue as to the existence of power or authority in a particular administrative agency is one primarily of statutory construction." *State ex rel. Comm'r of Ins. v. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). In construing laws regarding statutory authority of an administrative agency, the court's function is to ensure that the purpose of the Legislature in enacting the law is accomplished. *Id.* The court can look to the language of the statute, the spirit of the act and what the act seeks to accomplish. *Id.* Here, the purpose of the statute conferring upon the Commissioner the authority to approve requested rate increases was best stated by the Attorney General in the following 1969 opinion:

> The Act was designed to curb the abuse, at that time, of A & H companies collecting premiums, then mass cancelling of policies. In order to prevent companies from being locked in on inadequate rates, however, the General Assembly provided a method whereby the company, after giving the proper notice of non-renewal, could seek a rate increase.

40 Op. Att'y. Gen. 340, 341 (1969); *see also, American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 303 S.E.2d 649, *cert. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983). Furthermore, as to plaintiff's argument that had the Legislature intended to give the power to Commissioner Long to approve a full year fixed rate for accident and health insurance policies it would have done so explicitly, the Supreme Court of North Carolina has responded to this argument by stating that:

> The Legislature can obviously not anticipate every problem which will arise before an administrative agency in the administration of an act. The legislative process would be completely frustrated if that body were required to appraise beforehand the myriad situations to which it wished a particular policy to be applied and to formulate specific rules for each situation. Clearly, then, we must . . . leave to executive

officers the authority to accomplish the legislative purpose
. . . . The modern tendency is to be more liberal in permitting
grants of discretion to administrative agencies in order to ease
the administration of laws as the complexity of economic and
governmental conditions increases.

*State ex rel. Comm'r of Ins. v. Rate Bureau,* 300 N.C. at 402,
269 S.E.2d at 563 (citation omitted). Moreover, then applicable N.C.
Gen. Stat. § 58-254.7 (1981) provided that the Commissioner may
disapprove any accident and health policy in which the benefits
provided therein are unreasonable in relation to the premium, or
where the policy contains provisions that are unfair, unjust, or
inequitable. We conclude that Commissioner Long's approval of
the requested rate increase conditioned upon a delayed implementa-
tion date and one-year guarantee was within his statutory scope
of authority.

**[3]**   Second, Golden Rule argues that Commissioner Long exceeded
his authority by violating provisions of the Unfair Trade Practices
Act. Commissioner Long initially asserts that the Wake County
Superior Court has no jurisdiction over plaintiff's cause of action
because jurisdiction lies in the Office of the Commissioner of In-
surance under N.C. Gen. Stat. 58-63-40 (1991), therefore, summary
judgment was properly allowed. Although it is true that jurisdiction
under the Insurance UPTA lies in the Commissioner's office, de-
fendant fails to recognize that unfair and deceptive acts in the
insurance area are not regulated exclusively by Article 63 of Chapter
58, but are also actionable under N.C. Gen. Stat. 75-1.1 (1988).
*Ellis v. Smith-Broadhurst, Inc.,* 48 N.C. App. 180, 268 S.E.2d 271
(1980). Plaintiff is therefore correct. Chapter 58 did not create the
only means by which an injured party can seek recovery for damages,
and a claim for unfair and deceptive acts and practices within
the insurance industry may constitute the basis for recovery under
G.S. 75-1.1.

Nevertheless, plaintiff's argument is untenable. In *Sperry Corp.
v. Patterson,* 73 N.C. App. 123, 325 S.E.2d 642 (1985), this Court
held that G.S. § 75-1.1 does not create a cause of action against
state officers when they act as representatives of the State. Long
was a representative of the State in this matter, and plaintiff,
therefore, has no cause of action.

**[4]**   Third, Golden Rule asserts that Commissioner Long exceeded
his scope of authority by soliciting business for BCBS, by granting

BCBS extraordinary rate relief as the *quid pro quo* for BCBS's willingness to provide coverage for Golden Rule policyholders, and by arbitrarily favoring BCBS in rate review. Golden Rule sets forth this assignment of error in its main brief separately as evidence that Commissioner Long acted outside the scope of his authority. Golden Rule also sets forth these allegations concerning BCBS as evidence of violations of the UTPA. In either instance, we hold that Golden Rule's claim alleging political favoritism and discrimination against Golden Rule in favor of BCBS is not evidence that Commissioner Long acted outside his scope of authority.

As previously discussed, Long cannot be sued under Chapter 75. Furthermore, Golden Rule's separate allegation that BCBS received favorable treatment that discriminated against Golden Rule does not constitute a recognized cause of action. Golden Rule's mere allegations regarding special treatment of BCBS by the DOI and Commissioner Long are unsupported by law or fact. Golden Rule fails to afford this Court any citations of authority or portions of the record on which it relies to support its argument. This assignment of error is, therefore, deemed abandoned. N.C.R. App. P. 28; *S.J. Groves & Sons & Co. v. State*, 50 N.C. App. 1, 52, 273 S.E.2d 465, 491-92 (1980), *disc. review denied*, 302 N.C. 396, 279 S.E.2d 353 (1981).

Finally, Golden Rule argues that Commissioner Long exceeded his authority by initiating a retaliatory market conduct examination of Golden Rule. These allegations are contained in the second amended complaint, and, as we discuss in detail below, plaintiff's motion to file the second amended complaint was properly denied. This claim, therefore, is not subject to review.

### MALICE

[5] Although Commissioner Long did not act outside the scope of his statutory authority, he may still be liable in his individual capacity if plaintiff can establish that he acted with malice. Plaintiff argues that sufficient evidence of malice exists to defeat Long's summary judgment motion. We disagree.

Plaintiff points to Commissioner Long's communications with other insurance commissioners at the NAIC meeting as evidence of malice. At that meeting, Commissioner Long discussed his concerns over plaintiff's behavior in North Carolina, and the evidence shows that many of the commissioners expressed similar concerns

about plaintiff. Plaintiff concedes that discussions between insurance commissioners about common concerns are legitimate but argues that Commissioner Long's discussions are evidence of malice. We fail to see how a legitimate act, carried out in the performance of official duties, that is Commissioner Long's discussions with other insurance commissioners, could be evidence of malice. If that were the case, public officials would be immobilized at every threat of litigation.

As additional evidence of malice plaintiff contends that during the 6 February 1989 meeting between the DOI and plaintiff, Commissioner Long became angry and told plaintiff's CEO that he would get plaintiff in the press if plaintiff continued to take the dispute between the DOI and plaintiff to the public. Commissioner Long, according to plaintiff, also threatened to leave the meeting and stated that "if that's all we have to talk about . . . this meeting is over." In his deposition Commissioner Long also remarked several times that Golden Rule was holding the citizens of North Carolina hostage.

Although acts of hostility and anger may be used as evidence to prove malice we must reject plaintiff's characterization of such in this case. Given the antagonistic relationship that had developed between the parties we cannot imagine how Commissioner Long's reaction at the 6 February 1989 meeting could have been more predictable. We see no probative value in evidence that Commissioner Long threatened to leave the meeting or use the press against plaintiff. It is irrational to assume that Commissioner Long would not use the press since Golden Rule already had issued public statements against Commissioner Long and the DOI.

## 42 U.S.C. § 1983 CLAIMS

[6]  Plaintiff conceded that summary judgment was properly granted on the § 1983 claim against Commissioner Long in his official capacity, so there is no need to address that portion of the trial court's order.

Plaintiff has abandoned the § 1983 claim against Commissioner Long individually by failing to include any discussion of that claim in its initial brief. N.C.R. App. P. 28(b)(5) dictates that the appellant's brief must contain an argument setting forth the contentions of the appellant and citations of authority upon which the appellant relies. Failure to do so abandons the argument. *S.J.*

**GOLDEN RULE INSURANCE CO. v. LONG**

[113 N.C. App. 187 (1993)]

*Groves & Sons & Co. v. State*, 50 N.C. App. 1, 273 S.E.2d 465 (1980), *disc. review denied*, 302 N.C. 396, 279 S.E.2d 353 (1981).

We are aware that plaintiff argued the merits of the § 1983 claim against Commissioner Long individually in plaintiff's reply brief to Commissioner Long's official capacity brief. That argument however did not mend the defect in plaintiff's initial brief. Plaintiff could not address new questions in its brief unless they were raised in defendant's brief, N.C.R. App. P. 28(h), and defendant's individual capacity brief contained no discussion of § 1983. Accordingly, plaintiff's reply brief could not resurrect the abandoned claim. *See Animal Protection Society v. State*, 95 N.C. App. 258, 382 S.E.2d 801 (1989).

Plaintiff suggests that an argument on the merits of the § 1983 claim was unnecessary because summary judgment was granted on all claims on the basis of Commissioner Long's qualified immunity. Even if that is true, plaintiff's claim is still deemed abandoned. Plaintiff did not present any argument as to why Commissioner Long's qualified immunity defense should fail. In order to defeat the qualified immunity, plaintiff had to show that defendant violated some clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982). This standard determines if further proceedings are barred by qualified immunity by examining the law in existence at the time of the offense to determine if it contained "clearly established . . . rights of which a reasonable person would have known." *Id.* at 818, 73 L.Ed.2d at 410. Plaintiff pled violations of the due process clause, the equal protection clause, and the contract clause, but we are in the dark as to which particular rights plaintiff contends were violated, how they were violated, if they are well established, or even if plaintiff is alleging substantive or procedural due process violations. Because of these deficiencies, plaintiff's claim is deemed abandoned.

## SECOND AMENDED COMPLAINT

[7] Golden Rule's second assignment of error is that the trial court erred in denying its motion to file a second amended complaint. Plaintiff sought leave to file the second amended complaint on 13 December 1991 "in order to conform the complaint to the evidence obtained in discovery, to clarify ambiguities, clarify the limitation of the § 1983 claim to Jim Long, individually, and to facilitate presentation of the merits of this action at trial." The

second amended complaint sought to amend Count III of the original amended complaint in order to hold Commissioner Long, individually, liable for alleged violations of 42 U.S.C. § 1983 and to allege specific facts regarding violations that had not yet been pled. Judge Stephens denied the motion based on plaintiff's failure to exercise due diligence in filing the motion before the eve of trial. Furthermore, Judge Stephens concluded that to allow the motion would create a likelihood of further delay and possibility of undue prejudice to defendant, individually.

Leave to amend pursuant to N.C. Gen. Stat. § 1A-1, Rule 15(a) should be "freely given except where the party objecting can show material prejudice by the granting of a motion to amend." *Brown v. Lyons*, 93 N.C. App. 453, 456, 378 S.E.2d 243, 245 (1989) (quoting *Martin v. Hare*, 78 N.C. App. 358, 360, 337 S.E.2d 632, 634 (1985) ). The trial court may deny a motion to amend a complaint based on "a) undue delay, b) bad faith, c) undue prejudice, d) futility of amendment, and e) repeated failure to cure defects by previous amendments." *Martin*, 78 N.C. App. at 361, 337 S.E.2d at 634. A ruling on a motion to amend is addressed to the sound discretion of the trial court and is not reviewable absent an abuse of discretion. *Id.* In this case, we find no abuse of discretion on behalf of the trial judge.

Plaintiff did not file its motion to amend until almost two years and six months after the first amended complaint was filed. Both parties had engaged in extensive discovery and various matters had been brought before the court. Golden Rule filed the motion only thirty-nine days prior to the date set for trial. Moreover, the evidence also indicates that Golden Rule's delay was undue and would likely prejudice defendant. Factual allegations raised for the first time in the proposed second amended complaint were found by the trial court to be known by plaintiff, at the latest, in May 1991 when the matter was peremptorily set for trial. The trial judge, therefore, properly exercised his discretion in denying plaintiff's motion to file a second amended complaint.

Affirmed.

Judges ORR and MARTIN concur.