CALABRIA, Judge.
Appellants Cliff Dodson ("Dodson"), Stephen Page ("Page"), Terry Roberson ("Roberson"), Wendell Begley ("Begley") (collectively the "officials") and the Buncombe County Board of Education (the "Board") (collectively "defendants") appeal the denial of their motion to dismiss and motion for summary judgment on claims brought against them by Malcolm W. Brown ("Brown") andhis wife Lee Brown (collectively "plaintiffs"). We affirm in part, reverse in part, and remand.
On 1 March 2000, Page, the interim-superintendent of the Buncombe County Public School System (the "school system"), investigated allegations of an improper accounting of the proceeds of a basketball tournament (the "tournament"). According to Page the investigation revealed Brown, the principal of Clyde A. Erwin High School, (1) failed to number tournament tickets, (2) failed to deposit the tournament proceeds on a daily basis, (3) paid tournament staff in cash, and (4) granted unauthorized paid leave to his assistant principal, Bill Burrows ("Burrows"). On 8 March 2000, Page offered to end his investigation and take no disciplinary action as long as Brown agreed to request a transfer to another school and sign a waiver of all claims against the Board. Brown refused. Page immediately suspended Brown, with pay, pending the conclusion of Page's investigation. On 31 May 2000, Page notified Brown that he planned to recommend Brown's dismissal to the Board.
On 21 June 2000, at the end of Brown's hearing before the Board (the "hearing"), the Board voted for either dismissal or suspension. The vote against dismissal was four to two, with only Begley and Roberson, the chairman and vice-chairman of the Board, voting for dismissal. The Board instead voted five to one for a one-month suspension, without pay, for Brown's failure to properly handle the proceeds of the tournament and his failure to adequately monitor, record, and account for leave time granted certainemployees. The Board also ordered Dodson, who was to take office as superintendent on 1 July 2000, to supply Brown with written guidelines for handling school accounts and employee leave as well as monitor and report to the Board on Brown's compliance with the guidelines.
In August of 2000, criminal charges were brought against Brown for, inter alia, conspiracy to obtain property by false pretenses and filing false reports. The charges were based upon information provided to the district attorney in late March 2000 by Page, other school officials, and the Board's attorney, who had advised holding the meeting to report Page's findings. On 10 April 2001, Brown was acquitted of all charges.
On 4 September 2001, plaintiffs filed suit against defendants in their individual and official capacities claiming: (1) breach of contract, (2) malicious interference with contract, (3) civil conspiracy, (4) malicious prosecution, (5) abuse of process, (6) negligent infliction of emotional distress, (7) intentional infliction of emotional distress ("IIED"), (8) loss of consortium, and (9) punitive damages. Defendants filed a motion to dismiss and a motion for summary judgment on all claims. On 8 April 2003, the trial court: (1) granted defendants' motion to dismiss the claim for malicious prosecution; (2) granted in part and denied in part defendants' motion to dismiss the claims for breach of contract, malicious interference with contract, and punitive damages; (3) granted defendants' motion for summary judgment with respect to the claims for abuse of process and negligent infliction of emotionaldistress; (4) granted in part and denied in part defendants' motion for summary judgment with respect to the claim for IIED; and (5) granted defendants' motion for summary judgment with respect to loss of consortium except as it applies to plaintiffs' remaining claim for IIED. Plaintiffs' remaining five claims are: (1) breach of contract against defendants in their official capacities; (2) malicious interference with contract against Page, Begley, and Roberson in their individual capacities; (3) punitive damages against the officials in their individual capacities; (4) IIED against the officials in their individual capacities; and (5) a derivative claim of loss of consortium as it applies to the IIED claim. Defendants appeal the denial of their motions with respect to these remaining five claims. Defendants argue, inter alia, that public official immunity shields the officials in their individual capacities.
Generally, an appeal may not be taken from an interlocutory judicial ruling, such as a denial of a Rule 12(b)(6) motion to dismiss or a motion for summary judgment. Block v. County of Person, 141 N.C. App. 273, 276-77, 540 S.E.2d 415, 418 (2000). An interlocutory ruling "does not determine the issues but directs some further proceeding preliminary to a final decree." Vest v. Easley, 145 N.C. App. 70, 72, 549 S.E.2d 568, 571 (2001). An exception to this general principle is that rulings "denying dispositive motions based on public official's immunity affect a substantial right and are immediately appealable." Summey v. Barker, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001). Although normally shielded from liability, "[a] public official, engaged in the performance of governmental duties involving the exercise of discretion, may be held personally liable if it is alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his authority." Golden Rule Insurance Co. v. Long, 113 N.C. App. 187, 194, 439 S.E.2d 599, 603 (1993).
A [public official] acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others."
In re Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890-91 (1984) (citation omitted) (quoting Givens v. Sellars, 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968)).
Defendants assert the trial court erred in failing to grant their motion for summary judgment based on public official immunity as to all claims, because plaintiffs failed to forecast evidence that the officials committed malicious or corrupt acts or acts outside their respective scopes of authority. To prevail on a motion for summary judgment, a defendant must establish "that there is no genuine issue as to any material fact and that [the defendant] is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). A defendant can meet this burden by:
(1) proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposingparty (2) cannot produce evidence to support an essential element of his or her claim, or (3) cannot surmount an affirmative defense which would bar the claim.
Bernick v. Jurden, 306 N.C. 435, 440-41, 293 S.E.2d 405, 409 (1982). "In ruling on the motion, the court must consider the evidence in the light most favorable to the nonmovant, who is entitled to the benefit of all favorable inferences which may reasonably be drawn from the facts proffered." Averitt v. Rozier, 119 N.C. App. 216, 218, 458 S.E.2d 26, 28 (1995).
The evidence regarding Page, viewed in the light most favorable to plaintiffs, tends to show that Page either selectively enforced the school system's policies against Brown in an unusually harsh and single-minded manner or did so with the motive of removing Brown as principal of the high school. First, other school administrators, who had committed similar violations of State statutes and the school system's accounting policies, had not been disciplined. Second, according to the recently retired personnel director of the school system, Page had not adequately instructed principals on the distinctions between paid leave and the school system's policy of "flex-time" or the proper method of documenting "flex-time." Moreover, according to her, under general school system policy, Page's proper course of action would have been to instruct Brown on the administration and documentation of the school system's "flex-time" policy as it applied to administrators before proceeding to disciplinary action. Third, Page offered to stop the investigation if Brown requested a transfer. When Brown refused, Page immediately suspended himpending further investigation. Fourth, Page later suggested to Burrows that he would not be incriminated in the investigation if he cooperated with Page's efforts against Brown. When Burrows refused, Page immediately suspended him. Finally, according to one Board member, Page failed to follow the better administrative practice for an interim-superintendent, which would have been consulting the entire Board prior to (1) trying to persuade Brown to transfer, (2) initiating administrative proceedings against Brown, or (3) contacting law enforcement about Brown. We also note several material discrepancies between Page's affidavits and those of Brown and Burrows, which must be reconciled by a trier of fact. Accordingly, Page is not entitled to summary judgment based on the defense of public official immunity.
The evidence regarding Dodson, taken in the light most favorable to plaintiffs, tends to show that Dodson: (1) refused to meet with Brown prior to the hearing because he had not yet taken office as superintendent; (2) expressed disbelief to another that the Board voted to suspend rather than dismiss Brown; (3) closely supervised Brown after taking office, as instructed by the Board; (4) discussed with Begley the consequences to Brown if Brown were convicted of a criminal offense; (5) coordinated the criminal trial with the district attorney to accommodate school administrators' schedules; and (6) transferred Brown to another school during the trial.
The evidence regarding Begley and Roberson, taken in the light most favorable to plaintiffs, tends to show: (1) they were the onlytwo Board members who voted for Brown's dismissal; (2) during two Board meetings after the hearing, each denied requests to express positive opinions about Brown but allowed expressions of concern and negative opinions; (3) after Brown's indictment, Begley expressed to Dodson his belief that Brown was guilty; (4) Roberson was distressed by the Board's vote to suspend rather than dismiss Brown; and (5) in 1996 or 1997, Roberson expressed to the then superintendent his disapproval of Brown's job performance.
We find Dodson's, Begley's, and Roberson's statements and actions, when taken in the light most favorable to plaintiffs, were consistent with the duties and authority of their respective offices and constituted permissible opinions that Brown deserved stiff punishment, based on the evidence against Brown provided by Page. See Golden Rule, 113 N.C. App. at 197-98, 439 S.E.2d at 605 (finding no evidence of malice where the State insurance commissioner expressed concerns over plaintiff insurer's conduct to other states' commissioners). Accordingly, plaintiffs' evidence is insufficient to overcome Dodson's, Begley's, and Roberson's defenses of public official immunity in their individual capacities.
Defendants' remaining arguments address the merits of plaintiffs' claims and fail to raise a substantial right. Therefore, the arguments are interlocutory in nature, and we decline to address them.
For the foregoing reasons, this case is remanded for dismissal of all claims against Dodson, Begley, and Roberson in theirindividual capacities. This case is also remanded for proceedings on plaintiffs' four remaining claims against Page in his individual capacity and claim for breach of contract against the defendants in their official capacities. See Whitfield v. Gilchrist, 348 N.C. 39, 43, 497 S.E.2d 412, 415 (1998) (stating that a plaintiff may proceed with a breach of contract claim against the State "when the State has implicitly waived [its] sovereign immunity by expressly entering into a valid contract").
Affirmed in part, reversed in part, and remanded.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).