VIRGINIA C. LEFTWICH, Plaintiff v. LUTHER EUGENE GAINES, MARY ANN WRAY, and TOWN OF MOUNT AIRY, NORTH CAROLINA, Defendants

No. COA98-1304

(Filed 17 August 1999)

## 1. Fraud— sufficiency of evidence—purported opinion—town employee's self-dealing

In an action arising from the purchase of a commercial corner lot by the girlfriend of a town's Chief Building Official, there was sufficient evidence to support a jury's finding that defendant-Gaines' representations to plaintiff concerning a zoning change were knowingly false, contrary to Gaines' actual opinion, made with intent to deceive, and motivated by a plan to obtain strategically important corner property in order to secure benefits for himself and defendant Wray. A statement purporting to be opinion may be the basis for fraud if the maker of the statement holds an opinion contrary to the opinion he or she expresses and the maker intends to deceive the listener.

## 2. Fraud— sufficiency of evidence—victim deceived

In action arising from the purchase of a commercial corner lot by the girlfriend of a town's Chief Building Official, the evidence that plaintiff was deceived by defendant-Gaines' misrepresentations was sufficient to withstand defendants' motions for directed verdict and j.n.o.v. where plaintiff testified that she became doubtful about purchasing the property because of Gaines' statements.

## 3. Fraud— damages—town employee's self-dealing—loss of property

There was sufficient evidence of damages to withstand motions for directed verdict and j.n.o.v. in a fraud action against a town and its Building Official where the Official's (Gaines') false representation as to his opinion on zoning was a maneuver calculated to make plaintiff hesitate long enough for his girlfriend (Wray) to purchase the property and the loss of the property thwarted plaintiff's plan to expand her framing business.

## 4. Damages and Remedies— calculation of amount—fraud—loss of prospective real property purchase—expansion of business

There was sufficient evidence in a fraud action to calculate damages to the required reasonable certainty where plaintiff

alleged that defendants' fraud led to the loss of her opportunity to purchase adjoining property needed for the expansion of her business. A plaintiff may recover loss of bargain damages in a tort action if she establishes that the damages are the natural and probable result of the tortfeasor's misconduct and that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty.

**5. Unfair Trade Practices— town employee—acting outside scope of duties**

A town's Chief Building Official was not exempt from suit under Chapter 75 where the evidence was sufficient to establish that he was acting outside the scope of his duties when giving plaintiff a false opinion on zoning which allegedly caused her to hesitate and gave defendant's girlfriend the opportunity to buy the property. *Sperry Corp v. Patterson,* 73 N.C. App. 123, and *Golden Rule Insurance Co. v. Long,* 113 N.C. App. 187 protect government officials from actions under N.C.G.S. § 75-1.1 as long as they act as representatives of the State or a political subdivision of the State, but this protection is independent of, and different from, sovereign immunity.

**6. Cities and Towns— public duty doctrine—negligent supervision—intentional tort**

The public duty doctrine did not apply to an action brought against a town and its Chief Building Official for negligent supervision of the Building Official, who allegedly provided a deliberately misleading opinion on zoning in order to facilitate purchase of certain property by his girlfriend. The public duty doctrine is not incompatible with negligent supervision and is inapplicable where the employee's tort is intentional, as opposed to grossly negligent.

**7. Torts, Other— negligent supervision—sufficiency of evidence**

There was sufficient evidence of negligent supervision of a Chief Building Official (Gaines) by a town where plaintiff presented evidence that Gaines had previously been involved in buying property that he had discovered in the course of his employment, that the Mayor had reported complaints about earlier activities to the Town Manager and other authorities, that the Town Manager had asked Gaines to stop purchasing property in

the town limits, and that this request was inadequate to cause Gaines to change his ways.

**8. Evidence— relevance—action against town employee— mayor's remarks**

The trial court did not abuse its discretion in an action for negligent supervision of a town employee by admitting remarks by the mayor about the employee. The remarks were relevant and the court thrice gave a limiting instruction.

**9. Evidence— value of property—owner's opinion**

The trial court did not err in an action for fraud by admitting plaintiff's opinion as to the value of her property. Plaintiff had experience in real estate and defendants had the opportunity to cross-examine her, present their own evidence as to the value of the property, and to argue the value before the jury.

**10. Evidence— action for fraud and negligent supervision— motion in limine to forbid mention of criminal statute— denied**

The trial court did not abuse its discretion in an action for fraud and negligent supervision of a town employee by denying defendant's motion in limine to exclude mention of the criminal statute which forbids the use of non-public information by town employees to their benefit. The statute was relevant as evidence of the corrupt and possibly criminal nature of the employee's alleged acts and therefore relevant to support plaintiff's contention of a breach of fiduciary duty.

**11. Appeal and Error— preservation of issues—arguments of counsel**

Arguments of counsel which were not part of the record were not addressed. N.C. R. App. P. 10(a).

**12. Trials— motion for new trial denied—no abuse of discretion**

The trial court did not abuse its discretion by denying a motion for a new trial which was based upon whether the jury disregarded the instructions of the trial court, whether damages were excessive and the result of passion or prejudice, whether there was sufficient evidence to justify the verdict, and whether there were errors in law at trial.

**13. Unfair Trade Practices— refusal to resolve—attorney fees—findings**

The issue of attorney fees was remanded in an unfair trade practices action where the findings were inadequate to support the trial court's conclusion that defendant made an unwarranted refusal to resolve the matter fully.

**14. Conspiracy— fraud—circumstantial evidence—sufficient**

There was sufficient circumstantial evidence to support a jury's finding that the girlfriend of a town employee conspired with the employee fraudulently to discourage and outbid plaintiff for real property which plaintiff intended to purchase.

Appeal by defendants from judgment entered 9 April 1998 by Judge Clarence W. Carter in Surry County Superior Court. Heard in the Court of Appeals 20 May 1999.

*Harrell Powell, Jr., for plaintiff-appellee.*

*Brinkley Walser, P.L.L.C., by G. Thompson Miller, for defendant-appellants Luther Eugene Gaines and Town of Mount Airy, N.C., and Francisco & Merritt, by H. Lee Merritt, for defendant-appellant Town of Mount Airy, N.C.*

*Warren Sparrow for defendant-appellant Mary Ann Wray.*

EDMUNDS, Judge.

Defendants, Luther Eugene Gaines (Gaines), Mary Ann Wray (Wray), and Town of Mount Airy (Mount Airy), appeal a jury verdict finding liability for fraud, unfair and deceptive trade practices, and negligent supervision. For the reasons given below, we hold that there was no error in the trial. We remand the case for further hearings as to the award of attorney fees against Gaines and for clarification on the issue of joint and several liability. We affirm all other aspects of the trial court's judgment.

Plaintiff owned and operated a frame shop in her family homeplace, which was located in Mount Airy on a tract of land situated near the intersection of Linville Road and Riverside Drive. Although her lot bordered both streets, plaintiff only had access to Linville Road because utility poles obstructed her path to Riverside Drive. Plaintiff's lot also bordered a pie-shaped piece of land owned by Ms. Elizabeth Bowman (the Bowman property). The Bowman property,

which fronted Riverside Drive, was placed on the market in 1994. At that time, Mrs. Bruner, Ms. Bowman's daughter who had her power of attorney, contacted plaintiff and asked if she would be interested in purchasing the property. Plaintiff hoped to purchase the property, combine it with her own tract so that her shop would be accessible from both streets, and have the combined lot rezoned to allow her to operate her business there. Investigating her plan, plaintiff contacted Mount Airy's Director of Planning, David Hennis, to discuss potential use of the Bowman property. At the conclusion of her meeting with Hennis, plaintiff was satisfied that rezoning was possible and offered Mrs. Bruner $10,000 for the Bowman property. Mrs. Bruner neither accepted nor rejected the offer, nor did she make a counteroffer. Plaintiff perceived no sense of urgency on the part of Mrs. Bruner to sell the property.

Having already made her offer, plaintiff, on 18 March 1994, called Gaines, the Chief Building Official for the Town of Mount Airy, to inquire about a blocked ditch on her property. During their conversation, Gaines mentioned that he had condemned two structures on the Bowman property and asked if plaintiff knew the owner. Plaintiff told Gaines that Mrs. Bruner was selling the property and gave him Mrs. Bruner's phone number. Gaines advised plaintiff that the owner of the Bowman property would have to connect to city sewage and water service by July 1994.

During a subsequent telephone discussion with Gaines on 19 May 1994, plaintiff told him of her earlier conversation with Director Hennis. Gaines responded that the rezoning decision could go either way and that in his opinion, "to do any kind of zoning along there would be illegal," because it would constitute spot zoning. Gaines also informed plaintiff that water and sewage hookup would cost around $2,200, that plaintiff would bear the cost of removing the condemned buildings, and that if plaintiff could not get the property rezoned, she would have no recourse for her expenses. After plaintiff told Gaines she had made an offer of $10,000 for the property, Gaines suggested that plaintiff heed the advice she had received and bid only $6,000-8,000.

Two days later, Mrs. Bruner informed plaintiff that she had sold the property for $11,000 and that she could not tell plaintiff the name of the buyer. Plaintiff subsequently learned that Wray had purchased the Bowman property and that Wray was the girlfriend of Gaines. Upon learning of the relationship between these defendants, plaintiff

**LEFTWICH v. GAINES**

[134 N.C. App. 502 (1999)]

called Emily Taylor, Mayor of Mount Airy. As the Mayor listened to the gist of plaintiff's complaint but before plaintiff revealed Gaines' identity, Mayor Taylor volunteered that she knew plaintiff was speaking about Gaines. Mayor Taylor added that plaintiff's experience was not the first time Gaines had acted similarly. Plaintiff later discovered that Mount Airy's Town Manager had asked Gaines to refrain from purchasing property within town limits. When her complaint to the Town failed to result in any melioration, plaintiff initiated suit.

Plaintiff's complaint included allegations of fraud by Gaines and Wray, a conspiracy to buy the Bowman Property, breach of fiduciary duty by Gaines, and negligent supervision and retention of Gaines by Mount Airy. Plaintiff further alleged unfair and deceptive trade practices and sought treble damages and attorney fees in addition to punitive damages against all three defendants. The trial court dismissed claims for punitive damages against Mount Airy and also granted Mount Airy's motion for summary judgment on plaintiff's claim of unfair and deceptive trade practices. The jury returned a verdict for plaintiff, finding compensatory damages totaling $60,000. Plaintiff elected to receive treble damages in lieu of punitive damages. The court ordered Gaines and Wray to pay treble damages, resulting in an award of $180,000. The trial court further found that Mount Airy was jointly and severally responsible for the (untrebled) $60,000 compensatory award, ordered that Gaines and Wray pay attorney fees of $50,000, and denied defendants' motions for new trial and judgment notwithstanding the verdict. Gaines and Mount Airy jointly appeal; Wray appeals separately.

## I. Appeal by Gaines and Mount Airy

### A.

Gaines and Mount Airy first contend that the trial court erred by failing to grant their motions for directed verdict and judgment notwithstanding the verdict. They assign error, challenging the sufficiency of the evidence. The standard of review for both motions is the same; we consider the evidence in the light most favorable to the non-movant to determine whether it is insufficient to support a verdict in favor of the non-moving party. *See Smith v. Childs*, 112 N.C. App. 672, 682, 437 S.E.2d 500, 507 (1993).

### i. Fraud

[1] "In fraud cases, it is inappropriate to grant motions for directed verdict and judgment notwithstanding the verdict if there is evidence

that supports the plaintiff's *prima facie* case in all its constituent elements." *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 16, 418 S.E.2d 648, 658 (1992) (citations omitted). Gaines and Mount Airy argue that plaintiff's evidence failed to establish fraud. To prove fraud, the evidence must show (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which did in fact deceive, and (5) resulted in damage to the injured party. *See id.* at 17, 418 S.E.2d at 658 (citations omitted). Gaines and Mount Airy contend plaintiff's evidence is insufficient to establish that Gaines made a false representation of a material fact or that he intended to deceive plaintiff; they further contend that plaintiff was not deceived by Gaines and that plaintiff suffered no damage as a result of statements by Gaines. Their position is that Gaines' statements expressed opinions or a prediction about future actions, neither of which constitute representations of material fact.

It is true that, "[a] mere recommendation or statement of opinion ordinarily cannot be the basis of a cause of action for fraud." *Johnson v. Insurance Co.*, 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980)[1] (citing *Myrtle Apartments v. Casualty Co.*, 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1962)); *see also* 37 C.J.S. *Fraud* § 13, at 189 (1997); 37 Am. Jur. 2d *Fraud and Deceit* § 45 (1968). "However, the general rule that no one is liable for an expression of opinion is not a hard and fast rule; . . . it does not apply to the dishonest expression of an opinion not actually entertained." 37 C.J.S. *Fraud* § 13, at 190 (1997).

Our Supreme Court has adopted the stance enunciated in C.J.S. with regard to a "promissory representation." "As a general rule, a mere promissory representation will not be sufficient to support an action for fraud. A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." *Johnson*, 300 N.C. at 255, 266 S.E.2d at 616 (citations omitted). Elsewhere in its opinion, the *Johnson* Court equated "promissory representations" and "opinions," leading us to conclude that, for the purpose of a fraud action, these types of statements are treated similarly. Accordingly, a statement purporting to be opinion may be the basis for fraud if, at the time it is made, the maker of the statement

---

1. In *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559-69, 374 S.E.2d 385, 392 (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989), our Supreme Court disavowed the holding in *Johnson only* to the extent that its statement of the elements of fraud omitted the essential element of the intent to deceive.

holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener. This rule recognizes, "[t]he state of any person's mind at a given moment is as much a fact as the existence of any other thing." *Cofield v. Griffin*, 238 N.C. 377, 381, 78 S.E.2d 131, 134 (1953) (citation omitted); *see also In re Baby Boy Shamp*, 82 N.C. App. 606, 614, 347 S.E.2d 848, 853 (1986) (citation omitted), *disc. review denied*, 318 N.C. 695, 351 S.E.2d 750 (1987). The fraudulent nature of such statements may be proved by circumstantial evidence. *See Lewis v. Blackman*, 116 N.C. App. 414, 419, 448 S.E.2d 133, 136 (1994) (citing *Bank v. Belk*, 41 N.C. App. 328, 339, 255 S.E.2d 430, 437, *disc. review denied*, 298 N.C. 293, 259 S.E.2d 299 (1979)). Whether statements were intended and received as expressions of opinion or as statements of fact is a factual issue proper for the jury. *See Machine Co. v. Feezer*, 152 N.C. 516, 67 S.E. 1004, (1910), *cited in Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 501 (1974).

Here, plaintiff testified that when she discussed the zoning change with Gaines, he responded that her plan for the property would be spot zoning. In his deposition, which was read to the jury, Gaines admitted telling plaintiff that "to do any kind of zoning out there would be illegal, it would be spot zoning." Although these statements purport to be Gaines' opinion as to validity of the proposed rezoning, plaintiff presented circumstantial evidence from which the jury could find that Gaines actually did not hold that opinion and that he intended to deceive plaintiff. Plaintiff's evidence indicated that Gaines was romantically associated with Wray (the purchaser of the property), that Gaines lived rent-free in a home owned by Wray, that together Gaines and Wray attended and bid at the auction of a large parcel of land that adjoined the Bowman property, and that after selling her mother's property to Wray, Mrs. Bruner asked plaintiff if her property were for sale and, if so, what was plaintiff's asking price. Plaintiff presented further evidence that Gaines suggested to her that $6,000-$8,000 was an appropriate offer for the property; that only two days after plaintiff revealed to Gaines the amount she had offered, Wray purchased the Bowman property for $1,000 more than plaintiff's bid; and that the purchasers told Mrs. Bruner she could not disclose their identities to plaintiff. Moreover, by introducing evidence that buildings on the Bowman property were dilapidated and near collapse and that Wray never checked the existing zoning of the Bowman property, even though Wray had previously run afoul of zoning ordinances, plaintiff impeached Wray's testimony that she purchased the property on her own initiative in order to open a beauty

shop. Viewed in the light most favorable to plaintiff, this evidence is sufficient to support the jury's finding that Gaines' representations to plaintiff concerning a zoning change were knowingly false, contrary to Gaines' actual opinion, made with the intent to deceive, and motivated by a plan to obtain strategically important corner property in order to secure benefits for himself and Wray.

[2] Gaines and Mount Airy argue that plaintiff was not deceived by Gaines. Plaintiff testified that after talking with Gaines, she consulted an attorney, who impressed upon her the notion that if Gaines opposed a requested zoning change, the change would not occur. Plaintiff further testified that she became doubtful about purchasing the property on account of Gaines' statements concerning her financial exposure if she purchased the land but could not obtain the desired zoning change. Viewed in the light most favorable to plaintiff, this evidence that plaintiff was deceived by Gaines' misrepresentations is sufficient to withstand defendants' motions for directed verdict and judgment notwithstanding the verdict.

[3] Gaines and Mount Airy next argue that plaintiff suffered no damage as a result of statements by Gaines. However, a mere two days after plaintiff revealed to Gaines the amount she had offered, Wray bought the property for $1,000 more and instructed Mrs. Bruner not to disclose the buyers' identities. This evidence sufficiently supports the jury verdict that Gaines' false representation as to his opinion on zoning was a maneuver calculated to make plaintiff hesitate just long enough for Wray to snatch the property and to prevent plaintiff from finding out how she had been so precisely outbid. The loss of the property thwarted plaintiff's plan to expand her framing business.

[4] Defendants assert that plaintiff's evidence of the amount of damages was speculative and did not support the jury's award of damages. Because no other type of damages was identified by plaintiff, damages awarded in this case would represent "loss of bargain," in other words, the difference between the property she would have owned if not defrauded and the property that actually wound up in her possession. Although our Supreme Court has noted that it is an unresolved issue of first impression whether such damages may be recovered in a fraud action, see Britt v. Britt, 320 N.C. 573, 580-81, 359 S.E.2d 467, 472 (1987),[2] the Court has also held that "[i]n a tort

---

2. In Myers, 323 N.C. 559, 374 S.E.2d 385, our Supreme Court disavowed the holding in Britt only to the extent that its statement of the elements of fraud omitted the essential element of the intent to deceive.

action the general rule in North Carolina is that a plaintiff is 'entitled to recover an amount sufficient to compensate . . . for *all pecuniary losses* sustained . . . which are the natural and probable result of the wrongful act and which . . . are shown with reasonable certainty by the evidence.' " *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 462, 406 S.E.2d 856, 865 (1991) (emphasis added) (quoting *Huff v. Thornton*, 287 N.C. 1, 8, 213 S.E.2d 198, 204 (1975)). In a case where the plaintiff sought damages for loss of profits of a new business, and where the action lay in tort (as here) rather than in contract, our Supreme Court allowed recovery, stating, "damages must be the natural and probable result of the tort-feasor's misconduct." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 545, 356 S.E.2d 578, 585 (citation omitted), *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). Further, "the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Id.* at 547-48, 356 S.E.2d at 586 (citation omitted). Using these factors as a basis for its analysis, the *Olivetti* Court held that projected profits for a new business, when proven with reasonable certainty, could constitute damages in an action for fraud. In the case at bar, the loss of bargain damages sought are inherently less speculative than damages arising from loss of projected future profits of a new business. We therefore hold, consistent with *Olivetti*, that a plaintiff may recover loss of bargain damages in a tort action if she establishes (1) that the damages are the natural and probable result of the tortfeasor's misconduct and (2) that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty.

In the instant case, plaintiff testified that her frame shop had been in existence for thirteen years and that "I had a good, pretty good business." Plaintiff also testified that previously she had taken a two-year course in real estate at Forsyth Tech, had obtained a license to sell real estate, had worked for almost three years with a real estate sales firm that operated over a wide area of northwest North Carolina, and had familiarized herself with property values in that region. She testified that, valued separately, her property was worth $50,000 and that the Bowman property was worth $10,000, but that, in her opinion, combining the property to give access to both streets would double the value of the two properties to $120,000. We note that plaintiff arguably could have also attempted to pursue lost profits, as is permitted under *Olivetti*; instead, she limited her damage claim to the loss of the property value.

LEFTWICH v. GAINES

[134 N.C. App. 502 (1999)]

Because we are reviewing defendants' motions for directed verdict and judgment notwithstanding the verdict, we consider the evidence in the light most favorable to plaintiff. Plaintiff demonstrated significant training, knowledge, and experience in the field of real estate. Other evidence in the case indicated that, while the tract in question was physically small, its location was significant. If plaintiff owned it, she had access to Riverside Drive; if another owned it, plaintiff's access was denied. Owning both lots would create a significant synergy to plaintiff's benefit. This evidence coupled with plaintiff's testimony as to property value was sufficient to calculate damages with the required "reasonable certainty" sufficient to withstand defendants' motions. This assignment of error is overruled.

### ii. Constructive Fraud

Gaines and Mount Airy next argue that the court erred by failing to grant their post-verdict motions as to the issue of constructive fraud. Because we have already held that the evidence sufficiently established actual fraud, it is not necessary to address this issue. *See Kim v. Professional Business Brokers*, 74 N.C. App. 48, 52, 328 S.E.2d 296, 299 (1985).

### iii. Unfair Trade Practices

Gaines and Mount Airy initially argue that because plaintiff's claims for fraud and constructive fraud are not viable, neither is her claim for unfair and deceptive trade practices. Because we have already determined that the actual fraud claim was properly submitted to the jury, we overrule this argument.

[5] Next, Gaines and Mount Airy assert that because towns may not be sued under Chapter 75, town employees, such as Gaines, are also exempt from suit under that chapter. They cite *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 325 S.E.2d 642 (1985) and *Golden Rule Insurance Co. v. Long*, 113 N.C. App. 187, 439 S.E.2d 599, *appeal dismissed and disc. review denied*, 335 N.C. 555, 439 S.E.2d 145 (1993) in support of their argument. *Sperry* and *Golden Rule* protect government officials from a lawsuit under N.C. Gen. Stat. § 75-1.1 (1994) as long as they act as representatives of the State or a political subdivision of the State, e.g., a municipal corporation. *See Rea Construction Co. v. City of Charlotte*, 121 N.C. App. 369, 465 S.E.2d 342, *disc. review denied*, 343 N.C. 309, 471 S.E.2d 75 (1996). The protection afforded is independent of, and different from, sovereign immunity. *See Sperry*, 73 N.C. App. at 125, 325 S.E.2d at 644. The

plaintiff in *Sperry* failed to state a claim because there was no allegation of fraudulent, corrupt, or otherwise tortious conduct on the part of the State's representative. *See id.* at 125, 325 S.E.2d at 645. The holding was similar in *Golden Rule*, 113 N.C. App. at 196, 439 S.E.2d at 604. Here, in contrast, plaintiff alleged fraud and introduced evidence that Gaines took fraudulent actions inconsistent with his official duties.

Gaines testified that he was Chief Building Official for the Town of Mount Airy and that the job involved "taking applications for building permits, answering building code questions and things that come in, going out and making field inspections, doing police actions on code violations . . . holding hearings, enforcing any of the city ordinances that I'm directed to." To enforce the zoning code of Mount Airy, Gaines conducted investigations and inspections to confirm that buildings were in compliance. He also made appearances on behalf of Mount Airy before the Zoning Board of Adjustment.

Plaintiff made specific allegations of fraudulent behavior by Gaines. To support those allegations, she presented evidence that Gaines permissibly received information in his public capacity but then impermissibly used that information to help his girlfriend acquire property while making fraudulent representations to stall plaintiff. The evidence of Gaines' actions in this case is sufficient to establish that he was acting outside the scope of his duties in representing the town. Plaintiff's allegations of fraud distinguish this case from the holdings of *Sperry* and *Golden Rule*. This assignment of error is overruled.

iv. Negligence Claim against Mount Airy

[6] Gaines and Mount Airy argue that, when viewed in a light most favorable to plaintiff, the evidence against Mount Airy is insufficient to present the case to the jury. We disagree. Plaintiff's complaint alleged two causes of action: first, that Gaines' acts were attributable to Mount Airy and second, that Mount Airy corruptly and maliciously failed to discipline similar conduct by Gaines. The court, without objection, instructed the jury on negligent supervision.

North Carolina recognizes a cause of action for negligent supervision and retention as an independent tort based on the employer's liability to third parties. To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that "the incompetent employee committed a

tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency."

*Smith v. Privette*, 128 N.C. App. 490, 494-95, 495 S.E.2d 395, 398 (citations omitted), *appeal dismissed*, 348 N.C. 284, 501 S.E.2d 913 (1998).

Gaines and Mount Airy assert that the public duty doctrine defeats plaintiff's claim for negligent supervision because plaintiff cannot establish that Mount Airy owed any duty to plaintiff. We disagree. Under the public duty doctrine, "a municipality and its agents are deemed to act for the benefit of the general public and not for a specific individual when exercising its statutory police powers, and thus, ordinarily, no duty is owed, and there can be no liability to specific individuals." *Tise v. Yates Construction Co.*, 122 N.C. App. 582, 586, 471 S.E.2d 102, 106 (1996) (citation omitted), *aff'd as modified*, 345 N.C. 456, 480 S.E.2d 677 (1997). For the following two reasons, we hold that the public duty doctrine does not apply here to shield Gaines and Mount Airy.

First, the public duty doctrine is not incompatible with negligent supervision. The public duty doctrine was adopted in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992), in which a sheriff's deputy murdered his wife. The administrator of the wife's estate sued the sheriff, alleging both negligent failure to protect and negligent supervision and retention. Our Supreme Court held that the trial court properly directed a verdict in favor of the defendant on the issue of negligent failure to protect because the public duty doctrine prevented a lawsuit against the sheriff. The Court also found that the trial court properly directed a verdict for the defendant as to negligent supervision and retention; however, the *Braswell* Court did not apply the public duty doctrine to the claim of negligent retention and supervision, even though the doctrine had been asserted as a defense and even though the Court had relied on the doctrine elsewhere in its opinion. Instead, the *Braswell* Court addressed negligent supervision by focusing on the issue of notice. The *Braswell* Court found two lines of cases in its survey of North Carolina precedent. In one line, an employer was held liable for negligent supervision where the employee's wrongdoings were forecast to the employer and took place while working. In the other line, defendants were not liable for negligent supervision where the defendants were not on notice and where the wrongdoing took

place away from work. Because the facts in *Braswell* showed that (1) except for his relationship with his wife, the deputy was known to be stable and even-tempered and (2) the deputy's erratic behavior toward his wife prior to the murder occurred while he was off-duty, the Court categorized the case under the second line of cases. Here, by contrast, after receiving notice of prior wrongdoing of the nature complained of by plaintiff, Mount Airy allowed Gaines to continue his duties as a zoning inspector without undertaking supervision adequate to ensure there would be no recurrence; he was merely asked not to do it again. Gaines' fraudulent actions also took place while he was on duty. We therefore hold that defendants' invocation of the public duty doctrine does not trump plaintiff's claim of negligent supervision.

Second, the evidence in the instant case shows that Gaines deliberately misled plaintiff. We have held previously that where the employee's tort is intentional, as opposed to grossly negligent, the public duty doctrine is inapplicable. *See Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 406, 442 S.E.2d 75, 79, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994). In the case at bar, the evidence was abundant that Gaines' acts were intentionally fraudulent. Therefore, consistent with both *Braswell* and *Clark*, we hold that the public duty doctrine does not apply to the facts of the instant case.

**[7]** Plaintiff nevertheless had the burden of proving her case for negligent supervision against Mount Airy. Here, plaintiff presented (1) evidence that the Mayor of Mount Airy stated that Gaines had previously been involved in buying property that he had discovered in the course of his employment; (2) evidence that when earlier·victims of Gaines' purchasing techniques had complained, the Mayor had reported these complaints to the Town Manager and other authorities; and (3) a deposition by Gaines in which he admitted that the Town Manager had asked him to stop purchasing property in the town limits. Plaintiff's evidence demonstrated that the Town Manager's request was inadequate to cause Gaines to change his ways materially. Viewing this evidence in the light most favorable to the non-movant, we hold that plaintiff presented sufficient evidence to allow her claim of negligent supervision to be submitted to the jury. This assignment of error is overruled.

B.

**[8]** Gaines and Mount Airy next argue that the trial court erroneously admitted statements by the Mayor regarding Gaines, contending

that the statements should have been excluded as irrelevant under N.C. Gen. Stat. § 8C-1, Rule 403 (1992).

> Application of the Rule 403 balancing test remains entirely within the inherent authority of the trial court. Thus, the balance struck by the trial court will not be disturbed on appeal absent a clear showing the court abused its discretion by admitting, or excluding, the contested evidence. A trial court abuses its discretion when its decision "lack[s] any basis in reason."

*Warren v. Jackson,* 125 N.C. App. 96, 98-99, 479 S.E.2d 278, 280 (alteration in original) (citations omitted), *disc. review denied,* 345 N.C. 760, 485 S.E.2d 311 (1997). This evidence was relevant to the claim for negligent supervision, and the trial court thrice gave a limiting instruction as to the applicability of the Mayor's statements. The trial court therefore did not abuse its discretion in admitting the statements.

C.

**[9]** Gaines and Mount Airy next argue that the trial court erred by admitting plaintiff's testimony as to the value of her property because it was too speculative. Plaintiff responds by citing *Huff v. Thornton,* 287 N.C. 1, 213 S.E.2d 198 (1975), which held that a witness could testify about value as a *de facto* expert based upon experience in the field. *See id.; see also Zagaroli v. Pollock,* 94 N.C. App. 46, 379 S.E.2d 653 (holding that plaintiff, a real estate developer who owned and developed other similar property, demonstrated sufficient personal knowledge to give opinion testimony regarding the value of the particular property in question), *disc. review denied,* 325 N.C. 437, 384 S.E.2d 548 (1989). Here, evidence of plaintiff's experience in real estate has been set out in detail in part (I)(A)(i) of this opinion. Gaines and Mount Airy had ample opportunity to cross-examine plaintiff about her opinion as to the value of her property, present their own evidence as to value of the property, and to argue the value before the jury. This assignment of error is overruled.

D.

**[10]** Gaines and Mount Airy next argue that the trial court erred by denying their motion *in limine* to exclude mention of N.C. Gen. Stat. § 14-234.1 (1993) (misusing confidential information). Grant or denial of a motion *in limine* lies within the discretion of the trial court. *See Peed v. Peed,* 72 N.C. App. 549, 559, 325 S.E.2d 275, 282 (citation omitted), *cert. denied,* 313 N.C. 604, 330 S.E.2d 612 (1985). Gaines and

Mount Airy assert the statute had "no application to this case." They also contend that plaintiff improperly argued this statute to he jury. Section 14-234.1 is a criminal statute that, for the purposes of this case, forbids use by any town employee of any non-public information received in his or her official capacity, either to aid another in acquiring a financial interest in any property, or to gain any pecuniary benefit that may be affected by that information. N.C. Gen. Stat. § 14-234.1 (1993). Although we have held above that it is not necessary for us to address the issue of constructive fraud because plaintiff sufficiently established actual fraud, constructive fraud was one of plaintiff's theories at trial. To sustain her burden as to that claim, plaintiff had to establish that Gaines had a fiduciary relationship with her and that Gaines breached this duty. The statute was relevant as evidence of the corrupt and possible criminal nature of the acts allegedly perpetrated by Gaines. It is therefore relevant to support plaintiff's contention that Gaines' actions constituted a breach of the fiduciary duty he allegedly owed to plaintiff. Accordingly, we hold that the trial court did not abuse its discretion in denying defendants' motion *in limine*. This assignment of error is overruled.

[11] Gaines and Mount Airy also contend that plaintiff's closing argument pertaining to this statute improperly implied Gaines was a criminal. However, the arguments of counsel are not part of the record on appeal and therefore will not be addressed by this Court. *See* N.C. R. App. P. 10(a).

E.

[12] Gaines and Mount Airy next argue that the trial court erred in denying their motion for a new trial. The motion was based on four issues: (1) that the jury manifestly disregarded the instructions of the court; (2) that damages were excessive and appeared to have been given under the influence of passion or prejudice; (3) that the evidence was insufficient to justify the verdict, which was contrary to law; and (4) that errors in law occurred at trial to which defendants objected. In discussing this Court's standard of review of a trial court's order granting or denying a motion for a new trial, our Supreme Court has stated,

Appellate review "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). The trial court's discretion is " 'practically unlimited.' " *Id.*, 290 S.E.2d at 603 (quoting from

*Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915)). A *"discretionary* order pursuant to [N.C.]G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Id.* at 484, 290 S.E.2d at 603. "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

*Campbell v. Pitt County Memorial Hosp.*, 321 N.C. 260, 264-65, 362 S.E.2d 273, 275-76 (1987) (alterations in original). Gaines and Mount Airy have candidly acknowledged the heavy burden they must meet to prevail on this issue. Neither their arguments nor our review of the record reveals that the trial court abused its discretion in denying defendants' motion for a new trial on any of the four issues. This assignment of error is overruled.

F.

**[13]** Gaines and Mount Airy finally contend that the trial court erred in awarding $50,000 in attorney fees on the unfair and deceptive trade practices claim. Our Supreme Court has held that where

> "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit," the "presiding judge may, in his discretion, allow a reasonable attorney fee" to the prevailing party.

*United Laboratories, Inc. v. Kuykendall*, 335 N.C. 183, 190, 437 S.E.2d 374, 378-79 (1993) (alteration in original) (quoting N.C. Gen. Stat. § 75-16.1 (1994)). Gaines and Mount Airy argue that the treble damages award of $180,000 is $70,000 over and above plaintiff's compensatory damages ($60,000) and attorney fees ($50,000) and that allowing this award is an abuse of discretion. We find this argument unpersuasive because treble damages under N.C. Gen. Stat. § 75-16 (1994) are given for both punitive and remedial purposes, *see Marshall v. Miller*, 302 N.C. 539, 546, 276 S.E.2d 397, 401-02 (1981); however, for the following reasons, we remand this matter on the issue of attorney fees as to Gaines only. Section 75-16.1, which per-

mits attorney fees, was intended to encourage private enforcement in the marketplace and to make the bringing of such a suit more economically feasible. *See Winston Realty, Co. v. G.H.G., Inc.*, 314 N.C. 90, 95, 331 S.E.2d 677, 680 (1985). Plaintiff presented affidavits, exhibits, and proffers to the trial court to support her request for attorney fees. The hours committed and work done by plaintiff's counsel were made part of the record. Plaintiff established that while Mount Airy offered to settle for $12,000, Wray had moved prior to trial to dispense with a mediated settlement conference and refused to discuss settlement. However, the record is silent as to any settlement offers or negotiations by Gaines. The trial court made written findings that (1) plaintiff prevailed, (2) Gaines and Wray wilfully engaged in the acts and practices as found by the jury, and (3) there were unwarranted refusals by Gaines and Wray to fully resolve the matter constituting the basis of this lawsuit. *See Evans v. Full Circle Productions*, 114 N.C. App. 777, 781, 443 S.E.2d 108, 110 (1994). We hold that the trial court's findings as to Wray are adequately supported in the record and establish that the trial court did not abuse its discretion in awarding attorney fees against her. However, the findings are inadequate to support the court's conclusion that Gaines made an unwarranted refusal to resolve the matter fully. We therefore remand for further findings of fact as to the propriety of attorney fees to be paid by Gaines. *See United Laboratories*, 335 N.C. 183, 437 S.E.2d 374. As a housekeeping matter, we note that while the court ordered total costs in the amount of $1,877 be taxed against all defendants, the judgment does not state whether the liability is joint and several. On remand, the court should specify its intent in this regard.

## II. Appeal by Wray

**[14]** In challenging the denial of her motions for directed verdict and judgment notwithstanding the verdict, Wray argues that there was no competent evidence to support any of the jury's findings of fact and that the court erred in submitting the case to the jury. We disagree for the reasons stated above with regard to fraud and unfair and deceptive trade practices. Further, there was sufficient circumstantial evidence to support the jury's finding that Wray conspired with Gaines fraudulently to discourage and outbid plaintiff for the Bowman property. Wray's assignments of error are overruled.

No error as to defendants Mount Airy and Wray.

Remanded with instructions as to defendant Gaines on the issue of attorney fees.

Remanded for clarification on the issue of joint and several liability.

Judges WALKER and McGEE concur.