Martinez v. Reynders, 2013 NCBC 35.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 1742

ANDREA SAUD MARTINEZ, )
            Plaintiff )
            )
         v. )
            )
LUDO REYNDERS and AL CAVAGNARO, )
            Defendants )

**OPINION AND ORDER
ON MOTION TO DISMISS**

       THIS MATTER comes before the court upon Defendants Ludo Reynders and Al

Cavagnaro's Motion to Dismiss ("Motion"); and

       THE COURT, having reviewed the Motion, briefs in support and in opposition to

the Motion, arguments of counsel and other appropriate matters of record,

CONCLUDES that the Motion should be GRANTED for the reasons stated herein.

    *Harris, Winfield, Sarratt & Hodges, L.L.P., by Donald J. Harris, Esq., for Plaintiff
    Andrea Saud Martinez.*

    *Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by Philip J. Strach, Esq., and
    Margaret S. Scholz, Esq., for Defendants Ludo Reynders and Al Cavagnaro.*

Jolly, Judge.

I.

<u>PROCEDURAL HISTORY</u>

    [1]    On February 3, 2012, Plaintiff Andrea Saud Martinez ("Martinez") filed a

Complaint against Defendants Ludo Reynders ("Reynders") and Al Cavagnaro

("Cavagnaro").

    [2]    The Complaint asserts claims ("Claim(s)") against Reynders and

Cavagnaro for Fraud/Fraudulent Inducement ("Claim One"), Negligent

Misrepresentation ("Claim Two"), Conspiracy to Defraud ("Claim Three"), violations of

Chapter 75 of the North Carolina General Statutes ("Claim Four") and Punitive Damages ("Claim Five").

[3]  On December 3, 2012, Defendants filed the Motion seeking dismissal of the Complaint pursuant to Rules 12(b)(6) and 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)").

[4]  The Motion has been fully briefed and argued and is ripe for determination.

II.

FACTUAL BACKGROUND

The Complaint alleges, among other things, that:

[5]  Plaintiff incorporated Instituto de Pesquisa Clinica São Paolo SC LTDA ("IPCSP"), a pharmaceutical research and development firm in Brazil, in or about October 2000.[1]

[6]  On or about May 15, 2007, AAIPharma, Inc. ("AAIPharma"), a Delaware corporation headquartered in Wilmington, North Carolina, entered into a Quota Purchase Agreement with IPCSP, whereby AAIPharma purchased 100% of IPCSP's outstanding shares.[2]

[7]  IPCSP was renamed AAIPharma Pesquisa Clinica Ltda. ("AAIPharma Brazil").[3]

[8]  Reynders and Cavagnaro were directors and officers of AAIPharma and were responsible for all actions taken by AAIPharma.[4]

---

[1] Compl. ¶ 7.
[2] *Id.* ¶ 8.
[3] *Id.*
[4] *Id.* ¶. 9.

[9]     At the time of acquisition, IPCSP had no outstanding debt, other than trade debt incurred in the ordinary course of business and a lease obligation for its offices.[5]

[10]    On May 15, 2007, Plaintiff entered into an employment-management agreement with AAIPharma Brazil under which Plaintiff would be the sole manager of AAIPharma Brazil, reporting directly to Reynders.[6]  Despite being named manager, Martinez was excluded from "all decision making related to AAIPharma and AAIPharma Brazil."[7]  As a result, Martinez "was not aware of many of the business and financial decisions made by Defendants which materially affected the business and financial state of AAIPharma and AAIPharma Brazil."[8]

[11]    Following the acquisition of IPCSP, AAIPharma transferred several of AAIPharma Brazil's contracts to itself, which resulted in revenue streams under those contracts being paid directly to AAIPharma.[9]

[12]    AAIPharma failed properly to fund AAIPharma Brazil's operations and, as a result, AAIPharma Brazil began incurring debt.[10]

[13]    In 2008, Plaintiff notified Cavagnaro that AAIPharma Brazil was required by Brazilian Civil Code to have at least one citizen of Brazil as a quota holder.[11]  To

---

[5] *Id.* ¶ 11.
[6] *Id.* ¶ 14.
[7] *Id.* ¶ 15.
[8] *Id.*  The court notes that the Complaint does not specify which of Defendants' business and financial decisions were kept from Plaintiff and the extent to which Plaintiff was unaware of the financial condition of AAIPharma and AAIPharma Brazil.
[9] *Id.* ¶ 16.
[10] *Id.* ¶ 20.
[11] Quota holder is, apparently, the Brazilian equivalent of a shareholder.

comply with this law, Cavagnaro asked Plaintiff if she would become a quota holder for a short period of time.[12]

[14]    At the suggestion of Cavagnaro, Plaintiff agreed to take a 0.004% interest in AAIPharma Brazil for three months until a new Brazilian quota holder could be found.[13]

[15]    No new quota holder was found and, on May 18, 2009, Plaintiff relinquished her quota interest in AAIPharma Brazil.[14]

[16]    In late 2008, AAIPharma Brazil lacked the funds necessary to renew an existing lease on its office property.  At the request of Reynders, Plaintiff provided a personal guaranty of the lease.  Plaintiff agreed to provide the guaranty upon the urging of Reynders.[15]  Plaintiff alleges that her agreement with Reynders was to provide the guaranty for a limited ninety-day period while Defendants raised the capital necessary to guarantee the lease and relieve Plaintiff of any personal obligation.[16]

[17]    Defendants failed to raise the funds required to release Plaintiff from the guaranty and, as a result, Plaintiff has incurred in excess of $352,000 in personal liability on the lease.[17]

[18]    In or about July 2009, Brazilian tax authorities notified Plaintiff that AAIPharma Brazil owed more than $400,000 in back taxes and that if AAIPharma Brazil failed to pay the amount owed, Martinez would be held personally liable for the tax debt.

---

[12] *Id.* ¶¶ 31-32.
[13] *Id.* ¶ 33.
[14] *Id.* ¶ 35.
[15] *Id.* ¶¶ 37-40.
[16] *Id.*
[17] *Id.* ¶¶ 41-42.

After informing Defendants of the tax debt, Defendants refused to pay and Brazilian tax authorities notified Martinez that she would be held personally liable.[18]

[19]    As a result of the undercapitalization of AAIPharma Brazil, that entity incurred overdraft fees on certain business accounts at two Brazilian banks.  After Defendants failed to pay the overdraft fees, Martinez paid in excess of $38,000 to both banks and has committed to paying an additional $90,752.94.[19]

[20]    In December 2009, Defendants announced the closing of AAIPharma Brazil and the subsequent termination of all its employees in Brazil.[20]

[21]    The circumstances under which some employees of AAIPharma Brazil were terminated constituted a violation of Brazilian law.  As a result, AAIPharma Brazil was held liable for wrongful termination in lawsuits filed by former employees.  With regard to this liability, the Brazilian courts pierced the corporate veil of AAIPharma Brazil and found Plaintiff personally liable.  To date, Plaintiff's liability from these lawsuits exceeds $353,110.92.[21]

III.

DISCUSSION

[22]    When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted . . ." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987).  To make this determination, courts are to take the well-pleaded allegations of the complaint as true and admitted, but conclusions of law or

---

[18] *Id.* ¶ 21.
[19] *Id.* ¶¶ 29-30.
[20] *Id.* ¶ 44.
[21] *Id.* ¶¶ 46-48.

unwarranted deductions are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). Consistent with the system of notice pleading, a court, when considering a motion to dismiss pursuant to Rule 12(b)(6), should afford the complaint a liberal construction. *Zenobile v. McKecuen*, 144 N.C. App. 104, 110 (2001).

[23]    Following the standard set by Rule 12(b)(6), a complaint may be properly dismissed if (a) the complaint on its face reveals that no law supports plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) any fact disclosed in the complaint necessarily defeats plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

A.

## Claim One: Fraud/Fraud in the Inducement

[24]    To state a claim for fraud, a plaintiff must plead that (a) the defendant made a false representation or concealment of a material fact, (b) that was reasonably calculated to deceive, (c) that was made with the intent to deceive, (d) which did in fact deceive the plaintiff, (e) resulting in damage to the plaintiff. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568-69 (1988) (internal citations omitted). Plaintiff's reliance on any fraudulent statement or concealment must be reasonable. *MacFadden v. Louf*, 182 N.C. App. 745, 747 (2007). A representation must be of past or existing fact, not merely a statement of opinion. *Warfield v. Hicks*, 91 N.C. App. 1, 8 (1988).

[25]    Plaintiff alleges that Defendants fraudulently induced her into becoming a quota holder of AAIPharma Brazil and into personally guaranteeing the AAIPharma Brazil lease for office space. Plaintiff alleges that Defendants made false

representations when they told Plaintiff they would replace her as quota holder and would release her from her personal guaranty of AAIPharma's lease for office space.

i.

Quota Interest

[26]    It is unclear from the Complaint in what manner the circumstances surrounding Plaintiff becoming a quota holder of AAIPharma Brazil rise to the level of fraud.  The Complaint discloses that it was actually Plaintiff who informed Defendants that AAIPharma Brazil needed a citizen of Brazil to serve as a quota holder in order to comply with Brazilian law.[22]  In response to this information, Cavagnaro asked Plaintiff to take a fractional interest in AAIPharma Brazil on a temporary basis.[23]  In addition, the interest taken by Plaintiff in AAIPharma Brazil apparently could be relinquished at Plaintiff's discretion, as it eventually was on May 18, 2009.[24]

[27]    It appears from the Complaint that Plaintiff's theory is that Defendants induced her to become a quota holder knowing that (a) AAIPharma Brazil was in serious financial trouble and (b) Plaintiff, as the domestic quota holder, would ultimately become personally liable for the debts and obligations of AAIPharma Brazil described in the Complaint.

[28]    As mentioned above, the Complaint discloses that the idea of AAIPharma Brazil having a Brazilian quota holder originated with Plaintiff.  While this fact, standing alone, does not preclude Plaintiff's Fraud Claim, it strongly suggests the lack of any fraudulent intent or scheme on the part of Defendants as to making Plaintiff a quota holder.  The inference that Defendants somehow knew, at the time Plaintiff proposed

---

[22] *Id.* ¶ 31.
[23] *Id.* ¶¶ 32-33.
[24] *Id.* ¶ 35.

the inclusion of a Brazilian quota holder, that Plaintiff would ultimately become personally liable for the debts and obligations of AAIPharma Brazil were she to serve as the Brazilian quota holder is too attenuated to adequately allege fraudulent intent on the part of Defendants.

[29]    Further, the allegation that Cavagnaro asked Plaintiff to become a quota holder for three months, until a new quota holder was found, on its face is not a misrepresentation of a past or existing fact.  Defendants' assurance that it would replace Plaintiff as a quota holder within three months is, at most, a statement of future intent or promissory representation which cannot typically serve as the basis of a fraud claim. *Leftwich v. Gaines*, 134 N.C. App. 502, 508 (1999).  A promissory representation may only serve as the basis of a fraud claim where the promissory representation is made with a present intent not to carry it out and may therefore be said to be a statement of existing fact.  *Id.*  In order for a promissory representation to be the basis of an action for fraud, facts must be alleged from which it may reasonably be inferred that the defendant did not intend to carry out such representation when it was made.  *Whitley v. O'Neal*, 5 N.C. App. 136, 139 (1969).  The court finds no facts alleged in the Complaint from which it might reasonably be inferred that Defendants did not intend to remove Plaintiff as a quota holder at the time they represented they intended to do so.

[30]    Further, it is unclear how the representation that Defendants would replace Plaintiff as quota holder may be considered "reasonably calculated to deceive" or in what manner Plaintiff was actually deceived by it.  The Complaint suggests that Plaintiff's quota interest in AAIPharma Brazil could be freely relinquished by her at her

discretion.[25]  To the extent Defendants failed to replace Plaintiff as quota holder within three months, it appears Plaintiff had the ability to simply relinquish her quota interest in AAIPharma Brazil.  In light of this fact, the court concludes that Defendants representations to Plaintiff were not "reasonably calculated to deceive" so as to give rise to a claim for fraud.

[31]    Lastly, the Complaint contains insufficient allegations as to what damage Plaintiff suffered as a result of being made a quota holder in AAIPharma Brazil.  Plaintiff paid nothing for her quota interest in AAIPharma Brazil.[26]  There is no allegation in the Complaint that Plaintiff's personal liability for certain tax debts of AAIPharma Brazil, overdraft fees incurred by AAIPharma Brazil and AAIPharma Brazil's lease obligations accrued to her by virtue of her status as a quota holder.  Indeed, the Complaint provides no indication of how and in what manner Plaintiff incurred these personal liabilities.[27]  The Complaint does allege that Plaintiff was held personally liable as a quota holder by the Brazilian courts for AAIPharma Brazil's violations of Brazilian law in terminating certain of its employees.  As to that specific liability, the Complaint states that "Martinez' liability was based upon her status as a former quota holder and manager of AAIPharma Brazil."[28]  The Complaint therefore discloses that Plaintiff's liability in this regard would have accrued to her personally regardless of whether she had ever become a quota holder or whether Defendants had replaced her as a quota holder within three months.

---

[25] *Id.* ¶ 35.
[26] *Id.* ¶ 33.
[27] At a hearing on the Motion, Plaintiff's counsel was unable to represent whether these liabilities accrued to Plaintiff by virtue of her status as a quota holder, her status as a manager or both.
[28] Compl. ¶ 47.

ii.

Lease Guaranty

[32]    Plaintiff alleges that she agreed to provide a personal guaranty for AAIPharma Brazil's real estate lease for a limited ninety-day period while Defendants raised the funds necessary to guarantee the lease from the sale of AAIPharma's German unit or from its United States investors.[29]  Plaintiff alleges that Defendants specifically represented to her that she would be released from the personal guaranty within ninety days.[30]   Plaintiff alleges that Defendants hid the troubled financial condition of AAIPharma Brazil from her when making this representation and knew they would be unable to raise the funds necessary to relieve Plaintiff from her personal guaranty.

[33]    Plaintiff does not allege with any particularity which facts concerning the financial condition of AAIPharma and AAIPharma Brazil were concealed.[31]   Plaintiff alleges only that the financial condition of both entities in general was not disclosed to her.  Thus, the allegation that Defendants concealed the financial condition of AAIPharma Brazil from Plaintiff is likely in violation of Rule 9(b).

[34]    An actionable fraud claim requires not only reliance, but reasonable or justified reliance.  *MacFadden*, 182 N.C. App. at 749-50.   Plaintiff alleges, despite her role in AAIPharma Brazil as its "sole manager,"[32] that Defendants hid from her entirely the state of AAIPharma Brazil's financial condition.  However, Plaintiff's own complaint acknowledges that Plaintiff was aware that "in 2008, AAIPharma and AAIPharma

---

[29] *Id.* ¶ 37.
[30] *Id.*
[31] *See* N.C. R. Civ. P. 9(b) (requiring claims of fraud to be "stated with particularity").
[32] Compl. ¶ 14.

Brazil's business began to decline as a result of certain poor management decisions and the world-wide recession."[33] It appears that Plaintiff was aware that once AAIPharma acquired AAIPharma Brazil, all contracts were made payable to AAIPharma, leaving AAIPharma Brazil with no independent source of income.[34]

[35] Despite her awareness of these clear warning signs as to the financial condition of AAIPharma and AAIPharma Brazil, Plaintiff alleges that she relied on the "concealment" of the financial condition by Defendants. Further, Plaintiff does not allege that the financial state of AAIPharma and AAIPharma Brazil could not have been discovered through the performance of due diligence or that Defendants denied her the opportunity to discover the true state of AAIPharma Brazil's financial affairs. Given the facts as alleged in the Complaint, Plaintiff's alleged reliance was unreasonable.

[36] It appears from the Complaint that at the time Defendants asked Plaintiff to provide a personal guaranty of AAIPharma Brazil's real estate lease, Plaintiff understood that AAIPharma Brazil lacked the necessary funds to provide the guaranty itself. The Complaint further discloses that Plaintiff was aware that Defendants' ability to raise the funds necessary to provide the guaranty was contingent upon their ability to either sell AAIPharma's German unit or raise funds from investors.

[37] As with the representations related to Plaintiff becoming a quota holder, these representations are, at most, statements of future intent or promissory representations. Similar to the representations discussed above, there are no facts alleged from which it may reasonably be inferred that Defendants did not intend to relieve Plaintiff of her personal guaranty at the time they represented they would do so.

---

[33] *Id.* ¶ 17.
[34] *Id.* ¶ 21.

All that is alleged is that Defendants ultimately failed to raise the funds necessary to release Plaintiff from the personal guaranty.

[38]    Based on the foregoing, Plaintiff has failed to state a claim upon which relief can be granted with regard to Plaintiff's Claim for Fraud/Fraudulent Inducement, and as to said Claim, the Motion should be GRANTED.

B.

Claim Two: Negligent Misrepresentation

[39]    Negligent misrepresentation occurs when a party justifiably relies to his detriment on information provided without reasonable care by another who owes the relying party a duty of care.  *Jordan v. Earthgrains Baking Cos.*, 155 N.C. App. 762, 766 (2003).  A plaintiff must show that the defendant owed a duty to provide "complete and accurate information" and that such duty was breached before a negligent misrepresentation claim will lie.  *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 533 (2000).

[40]    In the context of an action for negligent misrepresentation, North Carolina courts have described a breach of the duty of care owed as, ". . . one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."  *Simms*, 140 N.C. App. at 534, *citing Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,* 350 N.C. 214, 218, 513 S.E.2d 320, 323-24 (1999).  In *Simms*, the court affirmed dismissal of the plaintiff's

claim for negligent misrepresentation because nothing in the complaint suggested the defendant was engaged in the business of giving the type of advice or information which was the basis for plaintiff's negligent misrepresentation claim. The court in *Simms* further found to be dispositive of plaintiff's claim the lack of any allegation that defendants had a pecuniary interest in, or obtained any pecuniary gain from, the provision of the allegedly negligent advice or information.

[41]    In the present action, Plaintiff alleges that Defendants negligently misrepresented that they were seeking a quota holder to replace her and that Defendants would release Plaintiff from her personal guaranty of AAIPharma Brazil's lease.[35]  Plaintiff further alleges that the statements as to these representations were false, intended to deceive and were reasonably relied upon by her.[36]

[42]    As in *Simms*, there is nothing in the present Complaint suggesting that Defendants were engaged in the business of providing the type of information which is the basis of Plaintiff's Negligent Misrepresentation Claim.  Further, there is no allegation that either of the Defendants received any pecuniary gain from representing to Plaintiff that they would seek another quota holder and that they would relieve her of the personal guaranty within ninety days.  Whatever indirect pecuniary benefit arose from both of those representations flowed to AAIPharma, not to Defendants individually.

[43]    Additionally, Plaintiff has failed to allege that Defendants owed Plaintiff a duty of care.  Corporate directors owe a duty of care to the corporation itself, not to individual employees. *Jordan*, 155 N.C. App. at 767.  At the time the alleged misrepresentations were made, Plaintiff was an employee of AAIPharma Brazil, a

---

[35] *Id.* ¶¶ 65-66
[36] *Id.* ¶¶ 67-71.

position she took as part of an arms-length business transaction. As a result, Defendants did not owe Plaintiff fiduciary duties in the course of their employee-employer relationship. Further, the court finds no allegations in the Complaint concerning any free-standing duty of care owed to Plaintiff by Defendants.

[44] Based on the foregoing, Defendants' Motion as to Plaintiff's Negligent Misrepresentation Claim should be GRANTED.

C.

Claim Three: Conspiracy to Defraud

[45] Because Plaintiff has failed to state a claim for either fraud or fraudulent inducement, Plaintiff has also failed to state a claim for her derivative Conspiracy to Defraud Claim. Therefore, Defendants Motion as to Plaintiff's Conspiracy to Defraud Claim should be GRANTED.

D.

Claim Four: Violations of N.C. Gen. Stat. § 75-1.1 ("UDTPA")

[46] A party violates North Carolina's UDTPA when it engages in "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. To prevail on a UDTPA claim, a plaintiff must show that there was an unfair or deceptive practice, that was in or affecting commerce and that the practice proximately caused injury to the plaintiff. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72 (2007). Commerce is statutorily defined as including "all business activities, however denominated, with the only exclusion being professional services." N.C. Gen. Stat. § 75-1.1(b). The North Carolina Supreme Court has defined business activities with a focus on the "activities the business regularly engages in and for which it is organized,"

or its "regular, day-to-day activities." *HAJMM, Inc. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594 (1991). Following *HAJMM*, courts have held that activities outside the scope of a firm's regular business activity are in not "in or affecting commerce" for UDTPA purposes. *See, e.g., Malone v. Topsail Area Jaycees,* 113 N.C. App. 498 (1994) (holding a charitable golf tournament was not a "business activity"). Additionally, matters of internal corporate management are not "in or affecting commerce" for UDTPA purposes. *Wilson v. Blue Ridge Elec. Mbrshp. Corp.*, 157 N.C. App. 355, 358 (2003).

[47]    Plaintiff has alleged that while she was an employee of AAIPharma Brazil, Defendants engaged in certain activities and made representations that were unfair and deceptive as to her. However, the activities and representations upon which Plaintiff bases the Complaint are matters of internal corporate management, including the internal financial operations of AAIPharma and AAIPharma Brazil. Plaintiff has not alleged any activity that is unfair or deceptive that occurred in AAIPharma or AAIPharma Brazil's regular, day-to-day activities for which those firms were organized. The issues of internal corporate management upon which Plaintiff bases her Complaint are not "in or affecting commerce" and, therefore, Plaintiff has failed to state a claim for violations of the UDTPA.

[48]    Based on the foregoing, Defendants Motion as to Plaintiff's Claim for Unfair and Deceptive Trade Practices should be GRANTED.

## E.

## Claim Five: Punitive Damages

[49] Because Plaintiff has failed to state any substantive Claim upon which relief may be granted, Plaintiff's claim for punitive damages should be DISMISSED.

NOW THEREFORE, it is hereby ORDERED that:

[50] Defendants' Motion to Dismiss is GRANTED as to all Claims. Accordingly, this civil action is DISMISSED.

[51] Taxable costs are charged to Plaintiff.

This the 10th of July, 2013.